INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Independent, William V. Bradley, its President, and Patrick J. Connolly, its Executive Vice President and Chairman of its Wage Scale Committee, Atlantic Coast District, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 14985.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 3, 1959.

Decided Jan. 28, 1960.

Edgerton, Circuit Judge, dissented in part.

Mr. Seymour Waldman, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, for petitioners. Mr. Louis Waldman, New York City, was on the brief for petitioners. Mr. Arthur Lazarus, Jr., Washington, D. C., also entered an appearance for petitioners.

Mr. George Schatzki, Atty., N. L. R. B., of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Mr. Thomas J. McDermott, Associate Gen. Counsel, N. L. R. B., Mr. Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., and Mr. Frederick U. Reel, Atty., N. L. R. B., were on the brief for respondent.

Before PRETTYMAN, Chief Judge, and EDGERTON and DANAHER, Circuit Judges.

PRETTYMAN, Chief Judge, and DANAHER, Circuit Judge.

This is a petition to review and set aside, and a cross petition to enforce, an order of the National Labor Relations Board. The order directed the union to cease and desist from:

"(a) Demanding that any agreement reached with the New York Shipping Association, Inc., cover employees in any unit other than the unit found appropriate for collective bargaining purposes in Case No. 2-RC-8388 so long as the cer-

tification issued in that case remains outstanding and the New York Shipping Association, Inc., insists upon confining the negotiations to the unit found in said case;

"(b) Resorting to economic pressure, including strike action or threat of such action to force the New York Shipping Association, Inc., to agree that any agreement reached with said association cover employees in any unit other than the unit found appropriate for collective bargaining purposes in Case No. 2-RC-8388 so long as the certification issued in that case remains outstanding and said association insists on confining the negotiations to the unit found appropriate in said case."

■ The members of the court agree that enforcement is to be denied, in view of the fact that there has been exhibited to the court a master contract entered into, subsequent to the aforesaid order, by the union and various employer associations in the ports along the North Atlantic coast from Portland, Maine, to Hampton Roads, Virginia, and all the parties thereto are now functioning under that master contract.

Judges PRETTYMAN and DANAHER are of the view that the petition for review should be remanded to the Board for its consideration in the light of the master contract and of the following comments upon which they agree.

As a result of an election, the Board made its certification in 1953 that ILA was to be the bargaining representative of employees in the Port of Greater New York, and a collective bargaining contract was entered into between New York Shipping Association, Inc. (NYSA) and ILA. That contract covered employees in the Greater New York unit and expired September 30, 1956. Commencing August 1, 1956, conferences looking to a new contract were inaugurated. ILA demanded that NYSA bargain beyond the limit of the unit confined to the Port of Greater New York, so as to include ports from Maine to Texas. For present purposes we merely mention the repeated meetings which occurred between August 1, 1956, and October 23, 1956, when NYSA filed a charge with the Board alleging that the union's insistence on a contract covering an industry-wide unit was an unfair labor practice which violated the Act.

Meantime, as the result of an election held October 17, 1956, the Board again certified ILA as the bargaining representative of employees of the Port of Greater New York.

Despite the pendency of the charge, ILA, commencing October 26, 1956, and repeatedly thereafter, insisted that NYSA yield to its demand for bargaining on a Maine-to-Texas basis,[1] even after NYSA had rejected the demand and insisted upon bargaining as to the certified unit.

The master contract which we were shown at oral argument, entered into between ILA and its affiliated locals and NYSA and other shipping association entities which joined it, appears to be a proper contract, for, apart from the particulars covered by the Act, it included "matters" as to which the respective parties were free to bargain or not to bargain, to agree or not to agree.[2] That contract, however, has only limited effect on our problem, for the issues raised on this record remain.

While the present certification remains outstanding it should control the legality of the bargaining process. The permissible voluntary actions of both parties acting in agreement are a different matter. The record shows that ILA has made no attack upon the Board's determination that the Port of New York unit was an appropriate bargaining unit, duly elected. ILA is asking this court to place it in a position to cover employees who

1. See Douds v. International Longshoremen's Ass'n, Independent, 147 F.Supp. 103 (D.C.S.D.N.Y.1956), affirmed 241 F. 2d 278 (2 Cir., 1957).

2. Labor Board v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958).

have not selected ILA as their bargaining representative. If the employees from Maine to Texas choose ILA, and if the Board shall then certify ILA, it will have gained Board recognition for the industry-wide representation status it seeks. But it is one thing to achieve that status within the ambit of the legislation and another thing to gain it by this court's fiat.

■ Paragraph (b) of the order, as above quoted, is clearly valid. As a matter of law the union cannot resort to economic pressure, including strike action, to *force* the employer to agree to deal with representatives of a unit different from the unit certified by the Board. The word used in the cease and desist order is "force", which means to compel or to posit as an ultimatum. The right of the union to urge a non-mandatory subject of bargaining ceases short of ultimate insistence. This is the view of the Supreme Court expressed in the Borg-Warner case.[3]

■ In paragraph (a) of the cease and desist order the Board used the word "Demanding". If it meant to prevent the union from listing as one of its initial requests in a negotiation that the bargaining unit be a different unit from the one certified by the Board, or from urging that request up to a point short of ultimate insistence, the order would not be valid. The union had a right to present, even repeatedly, a demand concerning a non-mandatory subject of bargaining, so long as it did not posit the matter as an ultimatum. However, in its "Decision", which accompanied the order, the Board explained that it meant a demand made after the opposite party "insists on confining the negotiations in conformity with the outstanding certification." Accepting that limitation upon the order, we think that paragraph to be valid.

There is considerable vagueness in the evidence, and indeed in the findings of the examiner, in respect to the precise extent of the insistence of the union upon the coast-wide negotiation. But we think

there is sufficient evidence to support the conclusion of the Board that the insistence continued after the employers had firmly rejected the proposal. This is the extent of the order, and so we think that in this respect it is valid.

The cross petition for enforcement is denied, and the case in all other respects is remanded to the Board for further consideration in the light of the master contract and of this opinion.

So ordered.

EDGERTON, Circuit Judge.

I concur in the denial of enforcement but dissent from the remand and from all but the first two paragraphs of the court's opinion. I would dismiss the petition for review as moot.