322 F.2d 40
 The STANDARD OIL COMPANY, an Ohio Corporation, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, and
oil, Chemical, and Atomic Workers Union, Local
11-395, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 15035, 15056.
 United States Court of Appeals Sixth Circuit.
 Aug. 29, 1963.
 
 J. King Rosendale, Cleveland, Ohio (McAfee, Hanning, Newcomer, Hazlett & Wheeler, James R. Tritschler, Cleveland, Ohio, on the brief), for Standard Oil Co., petitioner.
 Joseph E. Finley, Cleveland, Ohio (Metzenbaum, Gaines, Schwartz, Krupansky, Finley & Stern, Cleveland, Ohio, on the brief), for Oil, Chemical, etc., and others, petitioners.
 Elliott Moore, N.L.R.B., Washington, D.C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, attorney, N.L.R.B., Washington, D.C., on the brief), for respondent.
 Before CECIL, Chief Judge, O'SULLIVAN, Circuit Judge, and McALLISTER, Senior Circuit Judge.
 CECIL, Chief Judge.
 
 
 1
 These cases are before the Court on two separate petitions to review and set aside an order of the National Labor Relations Board issued on June 20, 1962. (137 NLRB No. 68.) Standard Oil Company, an Ohio corporation, the employer, challenges that part of the order finding that it violated Section 8(a)(1) and (5) of the National Labor Relations Act, hereinafter referred to as the Act. Oil, Chemical and Atomic Workers International Union and Oil, Chemical and Atomic Workers International Union, Local 11-395, hereinafter referred to as the Unions or the International and Local 395, challenge that part of the order finding that they violated Section 8(b)(3) of the Act.
 
 
 2
 The employer operated four refineries, one in Lima, one in Toledo and Nos. 1 and 2 in Cleveland. All of the employees of these refineries belonged to local unions of the petitioning International. The employees at Lima were members of Local 11-624, those at Toledo of Local 11-346, and at both refineries in Cleveland the employees were members of Local 11-395. At Lima the International was certified as collective bargaining representative by the Board. The locals were the certified representatives at the other locations. Contracts between the Company and the Unions covering the employees of the four refineries all had the same expiration date. Collective bargaining between the Company and the Unions for new contracts began in late 1960.
 
 
 3
 For a number of years separate contracts had been negotiated for each of the four refineries. At the time herein involved there was in existence the Sohio Council composed of a number of the locals in Company plants, including the locals with which we are here concerned. In September 1960, the Council adopted a bargaining program which included a one-year contract, an eighteen cents across the board wage increase, an agency shop clause and a provision that all benefits would be included in the contract instead of some of them being verbal and excluded. After a number of bargaining sessions had been held at each of the four refineries, R. P. Buchanan, district director of the International, suggested to the Sohio Council, in November 1960, that representatives from the other three committees be added to each bargaining committee. The alleged purpose of this was to improve communications between the four bargaining committees. The suggestion was adopted and the International's president issued credentials to six employees, members of the bargaining committees of their respective plants, as 'temporary representatives' of the International Union.
 
 
 4
 Following the appointment of these temporary representatives, some of them met with the regular bargaining committees at scheduled meetings of each of the four refineries. The plant managers refused to meet with the regular committees as long as the temporary representatives were present. These refusals resulted in four charges of unfair labor practice being filed against the Company by the International.
 
 
 5
 These charges were consolidated in one complaint before the trial examiner, along with three charges of unfair labor practice against the Unions. The Board found that the refusal of the Company to meet with the bargaining agents selected by the certified representatives of the employees was a violation of Section 8(a)(1) and (5) of the Act.[1]
 
 
 6
 The Company claimed that the Unions were trying to force company-wide bargaining. O. A. Knight, President of the International, wired Charles Stahr, President of the Company, on December 21st, that the Union had no intention of attempting company-wide bargaining, that it was ready to bargain plant by plant but insisted on its right to select its own bargaining representatives. The Company did not change its position and no further bargaining took place until January when the Union committees appeared without the temporary representatives.
 
 
 7
 On January 12, 1961, the manager of Cleveland No. 1 and the Union representatives agreed on the terms of a contract. The representatives of the Union said they would present it to the membership for ratification and if ratified would bring it back signed on the following Monday. Although the agreement was ratified on January 13, signing was delayed until January 31st.
 
 
 8
 On January 6th the employees of Cleveland No. 2 approved an agreement subject to the approval of Local No. 11-395. This contract was not signed until January 30th. On January 17th an agreement was ratified by the membership at Lima subject to approval of the International.
 
 
 9
 The representatives tentatively agreed to sign the contract on the 20th but the signing was delayed until January 30th.
 
 
 10
 It developed that the separate contracts of the three refineries which had reached agreements could not be signed on behalf of the Unions until an agreement was reached at Toledo. This was due to the action of the Sohio Council in refusing to release the individual units from its four-point bargaining program. The Union at Toledo had a lawsuit pending in the state court against the Company, in which the issues were common to the employees of all four plants. In its negotiations the Company pressed for the withdrawal of the lawsuit and the elimination or modification of the scope-of-bargaining clause in the contract to prevent renewal of the suit. The Sohio Council agreed to stand by Toledo on this issue and if it were successful each bargaining group would be allowed to settle its contract.
 
 
 11
 The Toledo membership ratified an agreement between the Union and the Company on January 27th and the contract was signed on February 6th. The day following the ratification by Toledo, the Sohio Council abandoned its fourpoint bargaining program. Thereafter the other contracts were signed by the Union representatives. The Company charged the International and Local 395 with unfair labor practices for refusing to execute contracts incorporating the agreements reached in bargaining at Lima and at Cleveland Nos. 1 and 2.
 
 
 12
 These charges were consolidated and by stipulation were heard with the Union charges against the Company at the hearing before the trial examiner which resulted in the order of the Board of June 20, 1962. The Board found that the Unions violated Section 8(b)(3) of the Act.[2]
 
 
 13
 One of the claims made on behalf of the Company is that the complaint should have been dismissed as to Cleveland Nos. 1 and 2 and Toledo refineries for the reason that the International was the charging party and the Company had no obligation to bargain with it at the plants of the above-named refineries. We find no merit to this claim. Local 298, Plumbers' Steamfitters etc., Union v. County of Door, 359 U.S. 354, 358, 79 S.Ct. 844, 3 L.Ed.2d 872; Local 25, Teamsters Union v. New York, N.H. & H.R.R. Co., 350 U.S. 155, 160, 76 S.Ct. 227, 100 L.Ed. 166; N.L.R.B. v. Indiana & Mich. Elec. Co., 318 U.S. 9, 17, 63 S.Ct. 394, 87 L.Ed. 579; 29 C.F.R. Sec. 102.9.
 
 
 14
 The Company's objection to the finding of the Board that it violated Section 8(a)(1) and (5) of the Act presents the question of whether the Company was obligated to meet and conduct bargaining negotiations in the presence of temporary International representatives. The Company objected to the presence of the temporary representatives for the reasons that they were neither employees of the particular refinery where negotiations were being conducted nor were they regular International representatives assigned to that refinery. The basic reasoning behind these objections was an apprehension that the presence or participation of the temporary employees in the bargaining at the separate refineries would amount to company-wide bargaining or at least evidence and acquiescence in such bargaining. The officers of the Company believed that the appointment of the temporary representatives and their participation in the bargaining was part of a subtle plot to bring about company-wide bargaining. The Unions disclaimed and intention or purpose to try to force company-wide bargaining.
 
 
 15
 The facts are not in dispute concerning the Unions' activity in appointing the temporary representatives and it attempting to have them sit in on the negotiations at the various plants. Neither is there a controversy of fact with respect to the action of the Company officials in refusing to meet with the temporary representatives present.
 
 
 16
 The trial examiner reviewed the evidence and found in his Intermediate Report that company-wide bargaining was not involved by the Unions' insistence on having the temporary representatives sit at the bargaining tables of the respective refineries. He said: 'At any rate, Standard refused to bargain before there was evidence that the temporary International representatives were intent upon doing anything but participate in the bargaining on a refinery by refinery basis as auxiliaries of the respective certified representatives.' The position of the Unions so far as the evidence goes can be pretty well summed up in a statement of the examiner: 'The evidence in the instant case is clear enough that both on Standard's part and on that of the Unions there is intramural communication and coordination with respect to bargaining positions.' The conclusions of the examiner were affirmed by the Board.
 
 
 17
 We are of the opinion that the inference and conclusion drawn by the examiner with respect to company-wide bargaining was correct and supported by the evidence. Where undisputed facts are open to more than one inference this Court is bound to accept the inference drawn by the Board. We may not draw another inference, even though we think it is more logical. N.L.R.B. v. Power Equipment Co., 313 F.2d 438, 441, C.A.6; N.L.R.B. v. Interurban Gas Corp., 317 F.2d 724, 725, C.A.6; N.L.R.B. v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106-107, 62 S.Ct. 960, 86 L.Ed. 1305; Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456; N.L.R.B. v. Walton Manufacturing Co., 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829; N.L.R.B. v. Ford, 170 F.2d 735, 739, C.A.6; Old King Cole v. N.L.R.B., 250 F.2d 791, 792, C.A.6; N.L.R.B. v. Bendix Corp. (Research Laboratories Div.), 299 F.2d 308, 310, C.A.6, cert. denied, 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65; N.L.R.B. v. Flemingsburg Mfg. Co., 300 F.2d 182, 184, C.A.6.
 
 
 18
 Absent any finding of bad faith or ulterior motive on the part of the Unions we conclude that it was the duty of the Company to negotiate with the bargaining committees of the Unions at the respective refinery plants even though the temporary representatives were present. In N.L.R.B. v. Deena Artware, Inc., 198 F.2d 645, 651, C.A.6, cert. denied, 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342, this Court held that employees had a right to choose their own bargaining representatives. N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 33, 57 S.Ct. 615, 81 L.Ed. 893; N.L.R.B. v. Sunbeam Electric Mfg. Co., 133 F.2d 856, 860, C.A.7; N.L.R.B. v. Blanton Co., 121 F.2d 564, 571, C.A.8; N.L.R.B. v. New Era Die Co., Inc., 118 F.2d 500, 504, C.A.3; N.L.R.B. v. Louisville Refining Co., 102 F.2d 678, 681, C.A.6. If there are unusual or exceptional circumstances management may make a valid objection to some agent or representative presented by the Union for bargaining. N.L.R.B. v. Kentucky Utilities Co., 182 F.2d 810, C.A.6; N.L.R.B. v. Roscoe Skipper, Inc., 213 F.2d 793, C.A.5. We find no unusual or exceptional circumstances here that would warrant the Company's refusal to bargain.
 
 
 19
 We affirm the Board's finding that the Company violated Section 8(a)(1) and (5) of the Act and enforcement of that part of the order is decreed.
 
 
 20
 The substance of the charge in the complaint against the International concerning the Lima refinery and in the charges against Local 395 involving Cleveland Nos. 1 and 2 is that, being the exclusive collective bargaining representatives of all of the employees in their respective units, they refused to bargain collectively with the Company by failing to execute a written contract incorporating the agreement reached between the Company and the respective Unions.
 
 
 21
 After agreements had been reached in Cleveland and Lima the Union representatives delayed signing the contracts. It finally became apparent that they would not sign until an agreement was reached at Toledo. This was due to unilateral or internal agreements with the International Union and the Sohio Council.
 
 
 22
 The trial examiner found that the bargaining representatives (the International and Local 395) could not excuse their refusal to execute contracts by ceding to a group or organization, not the statutory bargaining representative, the ultimate decisional control over signing the contracts to which they had agreed. On this basis the examiner found that the International and Local 395 had refused to bargain with the Company and had violated Section 8(b)(1)(A) and (3) of the Act.
 
 
 23
 The Board sustained the examiner's finding of violation by the Unions but disagreed with the reasoning by which he reached his conclusion. The Board concluded that because the Unions knew that withholding of approval by the International and the Council was unrelated to any dissatisfaction with the contract terms themselves but was based upon the unilateral decision to approve no agreement with the Company until negotiations were satisfactorily concluded by another local at the Company's Toledo unit, the delay was unlawful. The logic of the Board in support of this conclusion is that the Toledo issue was an extraneous matter imposed upon the Company after agreements had been reached at Cleveland and Lima.
 
 
 24
 The conclusion reached by the Board is a legal conclusion based on undisputed facts. We are in accord with this legal conclusion. When the parties reach an agreement they have a duty to execute a written contract. See: H. J. Heinz Co. v. N.L.R.B., 311 U.S. 514, 525-526, 61 S.Ct. 320, 85 L.Ed. 309; N.L.R.B. v. Nesen, 211 F.2d 559, 563, C.A.9, cert. denied 348 U.S. 820, 75 S.Ct. 32, 99 L.Ed. 646; N.L.R.B. v. Jeffries Banknote Co., 281 F.2d 893, C.A.9; N.L.R.B. v. Tower Hosiery Mills, Inc., 180 F.2d 701, 705, C.A.4, cert. denied 340 U.S. 811, 71 S.Ct. 38, 95 L.Ed. 596.
 
 
 25
 In arriving at its conclusion the Board decided the case on a narrower issue than the one advanced by the trial examiner. We do not need to decide in this case that any sort of provision for approval delegated by bargaining representatives to an international union or council is unlawful, nor do we.
 
 
 26
 The Unions cite United States Pipe and Foundry Co. v. N.L.R.B., 298 F.2d 873, C.A.5, cert. denied, 370 U.S. 919, 82 S.Ct. 1557, 8 L.Ed.2d 499, in support of their claims. This case is not applicable to the case at bar. The question in that case was whether the demand of the unions for common expiration dates of contracts for different units of the same employer was a proper subject of bargaining with the employer. The court held that it was. In our case the Unions did not even bring the subject of agreement at Toledo up for discussion at the bargaining table. They imposed agreement at Toledo as a condition after agreements were reached at Cleveland and Lima and without having previously conferred with the employer about it.
 
 
 27
 Neither is N.L.R.B. v. Insurance Agents' International Union, AFL-CIO, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454, pertinent to the case at bar. In that case it was claimed that the union sponsored concerted on-the-job activities by its members of a harassing nature to interfere with employer's business for the purpose of putting economic pressure on the employer to accede to the union's demands. The court held that economic pressure of this nature was not inconsistent with good faith bargaining. These harassing activities were going on during the bargaining between the employer and the union. They involved the parties to the negotiations and not parties negotiating on a separate contract.
 
 
 28
 The Board found that the International and Local 395 violated Section 8(b)(3) of the Act and enforcement of that part of the order is decreed.
 
 
 
 [1]
 Sections 158(a)(1) and (5), and 159(a), Title 29 U.S.C
 
 
 [2]
 Section 158(b)(3), Title 29 U.S.C