443 F.2d 218
 77 L.R.R.M. (BNA) 2366, 65 Lab.Cas. P 11,785
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
SOUTH ATLANTIC AND GULF COAST DISTRICT INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION AFLCIO, and its Local Union,
Local 325, Local 306, Local 1306, Local 341, Local 814,
Local 1029, Local 1175, and Local 440, Respondents.
 No. 30968. Summary Calendar.*
*(1) Rule 18, 5 Cir.; See Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431
F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 May 26, 1971.
 
 Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D.C., Clifford Potter, Director, Region 23, N.L.R.B., Houston, Tex., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Thomas Silfen, Kenneth Pearlman, Attys., National Labor Relations Board, for petitioner.
 Warner F. Brock, Houston, Tex., J. E. Williams, Galveston, Tex., for respondents.
 Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 The National Labor Relations Board (the Board) petitions the Court for enforcement of its order issued against the respondents, collectively referred to herein as the ILA District, pursuant to a finding by the Board that the respondents had engaged in an unfair labor practice in violation of Section 8(b)(3) of the National Labor Relations Act (NLRA). We enforce the Board's order.
 
 
 2
 This case arose from a labor dispute in the ports of Texas in the fall and spring of 1968-69. A strike occurred at the expiration of the collective bargaining agreement between the ILA District and the shipping and stevedoring employers in the various port cities. By far the majority of the striking employees were longshoremen, members of appropriate local organizations which bargained on a multi-employer basis for all longshoremen in all the Texas ports. The employers collectively were represented at the bargaining table by the West Coast Gulf Maritime Association (Maritime Association). Involved also in the strike was a smaller group of office clerks and checkers who were members of a separate union, Local 1924. Local 1924 represented the clerks and checkers in the Texas ports of Beaumont, Port Arthur and Orange, and bargained for these employees separately in single employer units.
 
 
 3
 After extensive negotiations, the Maritime Association and the striking longshoremen reached an agreement on all contract issues on March 30, 1969. This agreement did not include the separate local of clerks and checkers. In fact, negotiations for a contract with the clerks and checkers did not begin until April 3, 1969, a few days after the longshormen and the Maritime Association reached agreement.
 
 
 4
 However, despite the fact that the longshoremen had reached agreement with their employers on March 30, 1969, they served the employers with notice at the conclusion of the meetings (at which all contract issues had been resolved) that no longshoreman would return to work at any port until all ILA negotiations at that port had been concluded. Accordingly, while longshoremen returned to work in the majority of ports, they remained off work at the ports of Beaumont, Port Arthur, and Orange because of the pending negotiations between the employers and Local 1924. The clerks and checkers did reach agreement with their employers on April 12, 1969, and the longshoremen returned to work in those ports the following day.
 
 
 5
 The Board found that the respondent union and locals were guilty of a violation of Section 8(b)(3) of the NLRA. The Board's order requires that the respondents cease and desist from insisting that negotiations be concluded with respect to employees outside their respective units as a condition precedent to the execution of a contract. The Board further ordered the respondents to execute the agreement reached with the Maritime Association on March 10, 1969, and to post the appropriate notices acknowledging commission of an unfair labor practice.
 
 
 6
 Our question is whether there is substantial evidence on the record from which to enforce the Board's order.
 
 
 7
 The respondents do not contest the basic finding by the Board's trial examiner that although the respondents had reached a full agreement with the employers, they refused to return to work or to execute the agreement until a contract had been agreed upon by the clerks and checkers. Rather the respondents contend that the evidence shows that the employers acquiesced in the respondents' position that the longshormen would not return to work until the clerks and checkers had settled their dispute. We think that there is substantial evidence in the record to support the Board's finding that the employer group did not acquiesce in the ILA District's 'all of nothing' position. That decided, if follows as a proposition of law that the respondents are guilty of an unfair labor practice.
 
 
 8
 At the conclusion of contract negotiations at the March 30, 1969, meeting between the ILA District representatives and the Maritime Association, President Massey of the ILA announced 'We want it understood before we leave this room that nobody is going back to work at any port until all crafts have got a contract'. Apparently none of the employers' representatives contested Massey's ultimatum vocally at this meeting. The ILA offers this as evidence that the Maritime Association employers conceded this position to the ILA District. The Maritime Association acknowledges that its members knew that the ILA District had a policy of refusing to work until all employees had a contract. Nevertheless, Mr. Arnett stated in his testimony before the trial examiner, 'You may have stated it (the policy), but there was no understanding or agreement with the employers'. The trial examiner gave slight weight to the failure of the Maritime Association to object to the ILA District ultimatum, noting that in the face of Massey's unequivocal statement, objection would have been futile. To the contrary, the examiner placed emphasis on the fact that the employer group moved promptly to file its unfair labor charge on April 4, 1969, the next day after the longshoremen refused to return to work at the three ports in question here. If the ILA District was really laboring under the impression that the Maritime Association employers had conceded the 'all or nothing' policy, surely the filing of the charge served to dispel that illusion. We are persuaded fully that, viewed in its entirety, the evidence was sufficient to sustain the Board's finding that the employer group never acquiesced in the demand of the ILA District.
 
 
 9
 With the only fact issue disposed of, we conclude that the actions of the ILA District constituted an unfair labor practice whether characterized as a refusal to reduce to writing the final agreement of the parties or as an attempt to expand barganing power beyond the appropriate bargaining unit. In the context here the two characterizations are no more than two sides of the same coin.
 
 
 10
 When parties to collective bargaining reach a final agreement on the terms of the agreement, they have a duty to execute that agreement by written contract, and this duty may not be avoided by injecting extraneous issues into the negotiations. Section 8(d) of the NLRA. H. J. Heinz Co. v. N.L.R.B., 1941, 311 U.S. 514, 523-526, 61 S.Ct. 320, 85 L.Ed. 309, 318; Standard Oil Co. of Ohio v. N.L.R.B., 6 Cir. 1963, 322 F.2d 40, 45; N.L.R.B. v. Dalton Telephone Co., 5 Cir. 1951, 187 F.2d 811, 812, cert. denied 342 U.S. 824, 72 S.Ct. 43, 96 L.Ed. 623. Also as put by the trial examiner: 'On its face, this ILA policy bespeaks of violation of Section 8(b)(3) of the Act. A union enjoying statutory status as exclusive representative of all employees within a bargaining unit may not unilaterally extend the scope of its agency authority and insist to impasse upon the employer's capitulation to the demands of other employees and other unions'. See Douds v. International Longshoremen's Association, 2 Cir. 1957, 241 F.2d 278. This tactic indulged in by the ILA District of demanding agreement with the clerks and checkers was clearly designed, as the Board's counsel noted on brief, to utilize the longshoremen's superior bargaining power as a wedge to win concessions for the clerks and checkers. So to attempt to expand the bargaining power and influence of the longshoremen beyond the bounds of the Board-authorized appropriate bargaining unit constituted an unfair labor practice. Hess Oil & Chemical Corp. v. N.L.R.B., 5 Cir. 1969, 415 F.2d 440, 444; International Longshoremen's Association v. N.L.R.B., 1960, 107 U.S.App.D.C. 329, 277 F.2d 681; N.L.R.B. v. I.B.E.W., 5 Cir. 1959, 266 F.2d 349.
 
 
 11
 The order of the Board for the foregoing reasons, is enforced.