Kenneth W. BENDA, William H. Henderson, Swinton L. Corley, Individually and on behalf of all class members, Local Lodge 2228, International Association of Machinists & Aerospace Workers, an unincorporated association, and Santa Cruz Missile & Space Test Base Local Lodge 2230, International Association of Machinists & Aerospace Workers, an unincorporated association, Plaintiffs,

v.

GRAND LODGE OF the INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, an unincorporated association, Defendant.

No. C–77–2761–WWS.

United States District Court, N. D. California.

Dec. 15, 1977.

Richard H. Harding, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for plaintiffs.

John F. Henning, Jr., John Paul Jennings, Henning & Walsh, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

WILLIAM W SCHWARZER, District Judge.

This action is presently before the Court on plaintiffs' application for a temporary restraining order. The action was filed on December 6, 1977. On the same day, attorneys for both parties appeared before the Court in connection with plaintiffs' application. Memoranda and affidavits were submitted by plaintiffs and defendant. At the conclusion of the hearing, the Court set the matter for a further hearing on December 14, 1977. Inasmuch as both sides have had an opportunity to present memoranda, affidavits and argument, it is appropriate to treat plaintiffs' motion as one for a preliminary injunction pursuant to Rule 65, Federal Rules of Civil Procedure.

### The Parties

The material facts are set forth in the affidavit of Kenneth W. Benda and are substantially undisputed. Until November 25, 1977, when he was suspended by defendant, Benda was president and directing business representative of Missile & Electronic District Lodge 508 ("D.L. 508") of the International Association of Machinists & Aerospace Workers ("IAM & AW").

Defendant Grand Lodge, IAM & AW, is the head of all lodges under its jurisdiction. It is a labor organization within the meaning of 29 U.S.C. §§ 152(5) and 402(i). It is comprised of an executive council and representatives of the local lodges who are elected as delegates to special conventions.

The executive council of the Grand Lodge is comprised of the officers of the Grand Lodge: the International President, the general secretary-treasurer and nine general vice-presidents. The International President appoints various Grand Lodge representatives to serve as his personal representatives at various locations throughout the United States.

District lodges are delegate bodies made up of representatives duly elected from the local lodges within the area in which the district lodge is established. A local lodge consists of not less than 35 persons in any locality, qualified for membership and organized under a charter issued by the Grand Lodge. D.L. 508 is a delegate body made up of representatives elected from the local lodges operating within its jurisdiction. The jurisdiction of D.L. 508 covers all aircraft, missile, aerodynamic, electronics and test work performed by Lockheed Missile & Space Company at facilities operated by that company in Santa Clara and Santa Cruz Counties. The local lodges affiliated with D.L. 508 are Local Lodges 2225, 2226, 2227 and 2228 (Santa Clara County plants) and Local Lodge 2230 (Santa Cruz County plants).

Lockheed Missile & Space Company, Inc., ("LMSC") is a California corporation which is a wholly-owned subsidiary of the Lockheed Aircraft Corporation ("LAC"). LMSC operates facilities in Santa Clara, Santa Cruz, Santa Barbara and San Diego Counties, California, as well as in various locations in the states of Washington, South Carolina and Florida. LMSC is primarily engaged in the manufacture of space vehicles, with approximately 95 percent of the manufacturing performed pursuant to government contracts. LMSC is engaged in commerce and in operations affecting commerce within the meaning of 29 U.S.C. §§ 152(6) and (7). Lockheed Georgia Company ("GELAC"), Lockheed California Company ("CALAC"), and Lockheed Aircraft Services Company ("LAS") are, like LMSC, wholly-owned corporate subsidiaries of LAC. Each of these corporations is an employer as defined by 29 U.S.C. § 152(2).

*The Facts*

For at least the past 15 years, D.L. 508 and its affiliated local lodges have been parties to a series of three-year collective bargaining agreements covering the wages, hours and working conditions of employees of LMSC working in classifications within the jurisdiction of the IAM & AW. In addition other IAM & AW lodges representing LMSC machinist employees at LMSC plants located outside of Northern California were parties to those agreements. Included among them were lodges in Santa Barbara, San Diego and Florida. Each of these lodges was designated by the agreements as a contract enforcement group. Separate parts of the single agreement covering all LMSC machinists applied to each of the enforcement groups. IAM & AW was also a party to each of the agreements.

The IAM & AW lodges representing employees of GELAC have, for at least the past six years, maintained similar separate collective bargaining agreements with GELAC. And the IAM & AW lodges representing employees of CALAC and those representing employees of LAS have maintained separate collective bargaining agreements.

Prior to 1977, LMSC and the contract enforcement groups representing its employees negotiated their own collective bargaining agreements. The negotiating committee representing the LMSC contract enforcement groups made its own decision whether to submit a company proposal to its membership. When a proposal was submitted, only the members of LMSC enforcement groups, i. e., the members of the bargaining unit, voted on whether to approve it. No non-LMSC employees participated in the voting. The contract enforcement groups for GELAC, CALAC and LAS likewise each independently negotiated their own separate collective bargaining agreements. The covered employees of each individual company, and only those employees, voted on the contract proposals given to them by their employer, and only on those contract proposals.

It appears, therefore, that the machinist employees of each corporate subsidiary of LAC constitute a separate bargaining unit, and that there has been no history of multi-employer, single-unit bargaining by these employees and bargaining units. Until now, the collective bargaining agreements for each of these units were executed and, by their terms, became effective at such time as the members of that unit voted to accept the contract proposals presented by their particular employer.

Negotiations for new collective bargaining agreements to succeed the 1974–1977 agreements began during the summer of 1977. In accordance with past practice, non-economic issues were first discussed in separate bargaining conducted by representatives of LMSC and of the local lodges representing LMSC machinists. A Grand Lodge representative participated as a non-voting member.

In September 1977, coordinated bargaining between LAC and IAM & AM representatives on economic issues began and continued until October 5, 1977. In these discussions, in accordance with past practice, separate proposals for each separate Lockheed company were exchanged and discussed. While corporate-wide discussions were going on, separate, albeit coordinated, bargaining between LMSC and the negotiating committee representing LMSC machinists continued. On October 5, 1977, the LMSC negotiating committee took that company's proposal to its membership which voted to reject it. At the same time, employees of CALAC voted to reject CALAC's proposal and both LMSC and CALAC machinists went on strike on October 10, 1977. Machinists working for GELAC, however, taking independent action, voted to remain on the job at that time.

On October 19, 1977, IAM & AW General Vice-President Justin Ostro was designated by the Grand Lodge to coordinate the aerospace negotiations, and began to attend the negotiations between LMSC and the negotiating committee representing LMSC's contract enforcement groups as an observer.

On November 10, 1977, coordinated meetings between the various Lockheed companies and IAM & AW negotiating committees resumed. At that time, Ostro informed the employers' representative that the IAM & AW had decided to engage in corporate-wide joint unified bargaining. The company rejected this procedure.

Ostro also advised the members of the various negotiating committees that the votes of all employees in all contract enforcement groups would be pooled on all contract ratification votes. Plaintiff Benda objected to this procedure on behalf of D.L. 508. By telegram, dated November 10, 1977, International President Winpisinger confirmed Ostro's advice, relying on IAM & AW's Official Circular No. 596, dated April 4, 1958. That circular, among other things, purports to authorize the International President or his designee to determine whether the votes of a bargaining unit shall be pooled with other units affected by a multi-unit agreement. It also provides that the vote of a separate bargaining unit to accept an agreement may be made conditional on a favorable vote by the employees of all other units of the company then engaged in negotiations.

The LMSC negotiating committee nevertheless decided to proceed with separate negotiations in accordance with past practice and the practice in effect until November 1977, and so notified IAM & AW. Following further coordinated negotiations, the companies presented their final proposals on November 22, 1977. Each of the negotiating committees discussed the proposal. The GELAC and CALAC committees, representing a majority of all Lockheed machinists, determined that the proposals should not be submitted to their memberships. The LMSC committee determined that LMSC's proposal should be submitted to a vote of their membership, contrary to the instruction of the International Vice-President who treated the GELAC and CALAC actions as a majority vote of the negotiating committees to reject all proposals.

On November 23, 1977, the delegates of D.L. 508 met and voted to place the LMSC contract proposal before their membership. On November 25, 1977, the International President wired Benda, advising him that, on the basis of the proceedings by the D.L. 508 delegates, he had determined that an emergency existed, that the individual plaintiffs were suspended immediately for "endangering the good and welfare of the Grand Lodge, its local lodges and district lodges as well as the good and welfare of the organization and the membership," and that D.L. 508 was placed in trusteeship.

On November 27, 1977, LMSC machinists attended mass meetings at which, after discussion, approximately 80 percent of the membership of D.L. 508 voted by secret ballot in favor of the proposed agreement. Other LMSC contract enforcement groups also voted to accept the offer. By reason of the vote, the new agreement with LMSC went into effect and most of the LMSC machinists returned to work.

The Grand Lodge has placed pickets at the entrance to the LMSC Sunnyvale facility. Employees crossing the picket line face union discipline or expulsion. On the other hand, refusal to work subjects an employee to company discipline. The Grand Lodge has taken possession of the funds and other assets of D.L. 508, has suspended the individual plaintiffs from their union positions and has terminated plaintiff Benda's pay and benefits. Plaintiffs have represented that over 1,000 members of D.L. 508 have resigned or attempted to resign from IAM & AW to avoid the risk of loss of their jobs.

### Discussion

This application for preliminary injunction is governed by the principle set forth in *Wm. Inglis & Sons Baking Co. v. ITT Cont. Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975):

"One moving for a preliminary injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips strongly in his favor . . . ."

### I. Plaintiffs Have Raised Serious Questions.

Plaintiffs seek relief under the provisions of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 401 *et seq.*) also known as the Landrum-Griffin Act ("the Act"). This Court has jurisdiction to enforce those provisions by virtue of 29 U.S.C. §§ 412 and 464.

Section 462 of the Act provides that trusteeships shall be established by labor organizations over subordinate bodies

"only . . . for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

Section 464(c) further provides that

"a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing . . . shall be presumed valid for a period of eighteen months . . . and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 . . . ."

No serious question is raised concerning defendant's compliance with the procedural requirements of its constitution and by laws and the Court will assume, for purposes of this motion, that there has been compliance.

Defendant contends that its action in imposing the trusteeship on D.L. 508 was for the purpose of carrying out the legitimate objects of the labor organization, precipitated, it says, by the actions of plaintiff Benda and others in "withdrawing from the International's coordinated, national bargaining committee, and their subsequent adoption of a separate agreement" between D.L. 508 and LMSC. (Def.Memo. p. 3.) Those actions, defendant maintains, jeopardized

IAM & AW's ability to continue its strike activity and successfully conclude an agreement for the benefit of the entire membership.

The record before the Court, however, does not support the contention that plaintiffs withdrew from coordinated national bargaining. Rather, the undisputed facts establish that historically, employees of various Lockheed subsidiaries constituted separate bargaining units, that each operated under separate collective bargaining agreements, and that although negotiations were to some extent coordinated, decisions whether to accept or reject a proposal and whether to take strike action were made by vote of the employees in the separate bargaining units.

Rather than plaintiffs seeking to withdraw from this long-established procedure, officers of defendant sought to change it at a time when the 1977 negotiations had been underway for several months. They sought to do so by invoking a 1958 IAM & AW Circular purporting to authorize them to determine whether the votes of employees in separate bargaining units of an employer shall be pooled. By directing the pooling of the votes of all machinists' lodges of the several Lockheed subsidiaries, and pooling the votes of the several negotiating committees at the coordinated negotiations, defendant departed from the established pattern of bargaining and sought to impose on the members and the employers a new bargaining unit of its own making.

The conduct of defendant in imposing the trusteeship and suspending the individual plaintiffs in order to prevent the adoption of a collective bargaining agreement with LMSC until all of the Lockheed bargaining units had reached agreement, raises serious questions of violation of the Labor Management Relations Act ("LMRA").

Section 8(b)(1)(A) of the LMRA makes it an unlawful labor practice for a labor organization to restrain or coerce employees in the exercise of their rights under Section 7 to bargain collectively. Section 8(b)(3), moreover, makes it an unfair labor practice for a labor organization to refuse to bargain collectively. A refusal to execute a collective bargaining agreement once agreement is reached has been held to be a violation of Section 8(b)(3). *H. J. Heinz Co. v. Labor Board*, 311 U.S. 514, 525–526, 61 S.Ct. 320, 85 L.Ed. 309 (1941); *NLRB v. Warehousemen's Union Local 17*, 451 F.2d 1240, 1242 (9th Cir. 1971). Once agreement has been reached on the terms of an agreement, the duty to execute it may not be avoided by the injection of extraneous issues by the union. *NLRB v. South Atl. Longshoremen's Assoc.*, 443 F.2d 218, 220 (5th Cir. 1971). Specifically, the union may not decline to execute the agreement until agreement has been reached in other bargaining units or until the employer has agreed to expansion of the bargaining unit. *Standard Oil Company v. NLRB*, 322 F.2d 40, 44–45 (6th Cir. 1963); *NLRB v. Intern. Union of Op. Engineers*, 532 F.2d 902, 907–908 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977).

When the LMSC negotiating committee, upon vote of the D.L. 508 delegate body, submitted the company proposal to a vote of the membership of the bargaining unit and the membership approved it, the LMSC contract enforcement groups became obligated to execute the agreement and abide by it. Defendant's efforts to prevent plaintiffs, first, from entering into an agreement with LMSC until agreement had been reached in all units and, second, from abiding by the agreement approved by the membership appear prima facie to violate the provisions of the LMRA and the decisions enforcing them.

Defendant's conduct also raises a serious question under Section 8(b)(4)(A) of the LMRA which prohibits a labor organization from coercing an employer to join an employer organization. Defendant's actions to prevent plaintiffs from entering into an agreement until agreement had been reached in all other Lockheed bargaining units had the effect of coercing the employers into accepting involuntary multi-employer, single-unit bargaining and may well constitute an unfair labor practice. *Frito-Lay Inc. v. International Bro. of Team.*, 401 F.Supp. 370 (N.D.Cal.1975).

■ The determination whether an unfair labor practice has been committed is of course for the National Labor Relations Board to make and this Court does not intend to usurp the Board's function. Sections 462 and 464 of the Act do, however, require the Court to determine whether the imposition of the trusteeship was for a lawful purpose, *i. e.*, for the carrying out of the legitimate objects of a labor organization. In this case, clear and convincing evidence establishes that the trusteeship was established to prevent the LMSC lodges, although they had reached agreement with LMSC, from entering into a collective bargaining agreement with LMSC until agreement had also been reached between the other lodges and companies. Inasmuch as the LMRA clearly proscribes such conduct, the Court must find and conclude that the trusteeship was not established in good faith for a purpose allowable under Section 462.

*Gordon v. Laborers International Union*, 351 F.Supp. 824 (W.D.Okla.1972), *aff'd*, 490 F.2d 133 (10th Cir. 1974), *cert. denied*, 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 62 (1974), on which defendant relies, is not in point here. In that case, the local blatantly violated reasonable rules and regulations of the International controlling coordinated bargaining. The trusteeship was imposed to enforce those rules, not to advance unlawful purposes.

As the foregoing discussion shows, plaintiffs have demonstrated the existence of a serious question concerning the lawfulness of defendant's establishment of the trusteeship of D.L. 508.

II. *The Balance of Hardships Tips Sharply in Plaintiffs' Favor.*

Summary injunctive relief under the Act against the improper imposition of trusteeships over labor organizations has long been held to be the appropriate remedy. *Monborne v. United Mine Workers*, 342 F.Supp. 718 (W.D.Pa.1972); *Schonfeld v. Raftery*, 271 F.Supp. 128 (S.D.N.Y.), aff'd, 381 F.2d 446 (2nd Cir. 1967); *Parker v. International Brotherhood of Teamsters*, 229 F.Supp. 172 (W.D.N.C.1963).

The Benda affidavit convincingly demonstrates the hardship and irreparable injury threatened by defendant's actions. Defendant has been making apparently unauthorized disbursements of strike benefits and other payments out of D.L. 508's funds. Its actions with respect to D.L. 508's funds may cause that lodge to become insolvent. It has suspended officers and business representatives whose services as a result may be permanently lost to the plaintiff lodges. Most importantly, it is confronting the membership of those lodges with the choice of violating their collective bargaining agreement or disobeying defendant's orders, facing discipline and sanctions regardless of their choice. As a result, D.L. 508 has lost members and is threatened with the imminent loss of more members. These actions threaten the status of D.L. 508 as an effective and viable collective bargaining representative.

III. *Attorneys Fees.*

■ Although Sections 412 and 464 of the Act make no specific provision for an award of attorneys fees, they have been interpreted as vesting discretion in the District Court to award fees. *Gartner v. Soloner*, 384 F.2d 348 (3rd Cir. 1967), *cert. denied*, 390 U.S. 1040, 88 S.Ct. 1633, 20 L.Ed.2d 302 (1968); *Burch v. International Ass. of Machinists*, 337 F.Supp. 303, 314 (S.D.Fla.1971), *aff'd*, 454 F.2d 1170 (5th Cir. 1971). Although attorneys fees would not ordinarily be awarded at this stage of the proceeding, exigent circumstances exist here. Defendant has indicated that it may seek to charge the plaintiff lodges and their officers personally for the sums expended by them for attorneys fees incurred in this action. Inasmuch as the Court has found plaintiffs to be entitled at least to preliminary relief, it is appropriate that they be protected against action by defendant retaliatory in effect. Accordingly, the Court will order defendant to pay plaintiffs' reasonable attorneys fees in an amount to be fixed by the Court. Counsel for plaintiffs is directed to serve and file an application

for fees, supported by a detailed affidavit, by December 23, 1977. Defendant may serve and file an opposing affidavit by December 30, 1977.

### ORDER

On the basis of the foregoing, which shall constitute the Court's Findings of Fact and Conclusions of Law, the Court orders, adjudges and decrees as follows:

1. The defendant, and its officers, agents, representatives and employees, and all persons acting in concert or at the direction of any of them, are hereby

    A. Ordered to rescind immediately the suspension of all officers, business representatives and delegates of District Lodge ("D.L.") 508;

    B. Ordered to return control of the funds, assets and affairs of D.L. 508 to its duly elected officers and delegates;

    C. Enjoined and restrained from establishing, administering or maintaining a trusteeship of D.L. 508 and any of its constituent local lodges;

    D. Enjoined and restrained from suspending or taking other disciplinary action against any officer, business representative, or delegate of D.L. 508 or any member of the 1977 Lockheed Missile & Space Company, Inc. ("LMSC") negotiating committee on account of or based on any act or omission in connection with the submission of any company proposals for approval by delegates or members of D.L. 508 or any of its constituent local lodges;

    E. Enjoined and restrained from inducing or coercing, directly or indirectly, any member of any contract enforcement group within the jurisdiction of D.L. 508 having approved a collective bargaining agreement with LMSC not to report for his regularly assigned work, or expelling or disciplining, or threatening any such member, directly or indirectly, with expulsion or discipline for reporting for his regularly assigned work; and

    F. Enjoined and restrained from maintaining in effect any orders or instructions to members of any contract enforcement group within the jurisdiction of D.L. 508 having approved a collective bargaining agreement with LMSC directing or advising such members to cease performing their regularly assigned work.

2. The foregoing order shall remain in effect until further order of this Court.

3. Plaintiffs are awarded reasonable attorneys fees in an amount to be determined by the Court.

IT IS SO ORDERED.