UNITED STATES of America

v.

Michael BUDZANOSKI and John Seddon.

Crim. No. 70-216.

United States District Court,
W. D. Pennsylvania.

Aug. 20, 1971.

See also D.C., 322 F.Supp. 1064.

Thomas H. Henderson, Jr., Hays Gorey, Jr., Sp. Attys., U. S. Depart. of Justice, Washington, D. C., Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Paul A. Simmons, Monongahela, Pa., Lloyd F. Engle, Jr., Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

The defendants were convicted by a jury of conspiring to violate and violating, in four counts, the Labor-Management Reporting and Disclosure Act of 1959. They now move for a new trial, judgment of acquittal, and arrest of judgment. Count I of the information charged a conspiracy to violate 29 U.S.C. § 439(c) [1] in violation of 18 U.S.C. § 371.[2] Counts II, III and IV charged actual violations of 29 U.S.C. § 439(c). The charges emanate from false entries allegedly made or caused to be made by the defendants in certain books and records of District 5, United Mine Workers of America. Taking the facts and drawing the inferences reasonably consistent with the evidence in favor of the Government,[3] we opine the following facts. At an executive board meeting of the members of the Executive Board of District 5, UMW, the President of District 5, defendant Budzanoski, outlined to the Board a plan designed to divert money from the treasury of District 5 for the purpose of financially assisting the re-election campaign of the President of

---

1. Section 439(c) provides that,
 "[A]ny person who willfully makes a false entry in * * * any books, records, reports, or statements required to be kept by any provision of this subchapter. * * *"
 shall be guilty of an offense against the United States.

2. Section 371 provides that,
 "[I]f two or more persons conspire either to commit any offense against

the United States * * * and one or more of such persons do any act to effect the object of the conspiracy. * * *"
each is guilty of an offense against the United States.

3. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Stubin, 446 F.2d 457 (C.A.3, July 15, 1971).

the United Mine Workers International, W. A. Boyle. The plan called for certain members of the Board, the four unindicted co-conspirators, Marion Pellegrini, Peter Halvonik, Roland Nuccetelli and Francis McCallister, to submit false vouchers of expenditures, to cash the checks received for the vouchers, and to return the cash to defendant Seddon. In pursuit of this plan, Pellegrini and Halvonik submitted vouchers, for $1,870.-00 and $2,370.00 respectively, which purported to seek reimbursement for monies spent to prevent the spread of certain wildcat strikes. In fact such monies had not been spent. Knowing the vouchers were false, defendant Seddon issued checks to both Pellegrini and Halvonik in the amounts of the vouchers. Pellegrini and Halvonik, in turn, cashed the checks and returned the proceeds to Seddon. The plan constituted Count I, the false vouchers Counts II and III, and a financial report reflecting Pellegrini's falsely vouched expenses of $1,870.00 Count IV.

## I. MOTIONS FOR A NEW TRIAL

 The defendants' motions for a new trial are based on myriad assignments of error, including judicial harassment of defendants' counsel and judicial assistance of Government counsel. Most of the assignments are traceable to the same unrestrained and indiscriminate zeal which characterized the approach of defendants' counsel to the trial. The continual probing and frequent exceeding of the bounds of trial propriety by Attorney Simmons particularly, necessitated the bulk of the rulings of which the defendants complain. Many of the assignments deal with matters discretionary with the Court, no abuse of which

is arguable.[4] Many of the assignments, in context, are frivolous,[5] and many plainly unsupported by the record. Others were not preserved by objections at trial. None of these will be reviewed individually.

 Those few assignments of error which do merit comment are, at best, insubstantial. The admission of the testimony of the Government's rebuttal witness Leon Yablonski is questioned. Yablonski was called by the Government to testify to certain statements made to him and his deceased brother, Joseph Yablonski, by Francis McCallister, an unindicted co-conspirator and a defense witness. The defendants contend that the appearance of Yablonski was "highly prejudicial" and that his testimony should not have been admitted principally because McCallister's statements were hearsay and not excepted since they were not made in furtherance of the conspiracy. We think, however, that the testimony was admissible not for its value as affirmative evidence, but as appropriate impeaching evidence. Clearly prior inconsistent statements are admissible to impeach the credibility of a witness. See Isaac v. United States, 431 F.2d 11 (C.A.9, 1970). Moreover, the prior inconsistent statements concerned the core of the charges, and therefore were not improper as impeachment relating only to collateral matters.

 The defendants also question the exclusion of the testimony of defense witness Thomas McMillan. The defendants sought to have McMillan testify as to his opinion of what records are required to be kept under the Labor-Management Reporting and Disclosure Act. McMillan, an accountant with the

---

4. See United States v. Stirone, 311 F.2d 277 (C.A.3, 1962) and United States v. Stayback, 212 F.2d 313 (C.A.3, 1954).

5. For example, defendants assert error in the Court's cautions to the jury that questions posed on cross-examination are not to be considered as substantive evidence of the answer suggested thereby. The duty of the trial Court to control those questions was recently observed by

this Circuit in Fuhrman v. Reading Company, 439 F.2d 10 (C.A.3, March 11, 1971). Attorney Simmons went so far, at one point, as to remark aloud, following the testimony of a Government witness, that he might want to put a man on to rebut that witness. The impropriety of this remark, as well as the duty of the Court to admonish Attorney Simmons and caution the jury was manifest.

United Mine Workers International, Washington, D. C., was permitted to testify as to what records he *thought* were required to be kept. The matter of what records were actually required to be kept, however, was deemed one factually only for an expert witness charged with the administration of the Act, and legally for the Court.

■ Defendants assign as error the confrontation of defendant Seddon with his testimony before a Grand Jury. That testimony was posed solely for impeachment purposes, i. e., impeachment by a prior inconsistent statement, and for that purpose was clearly admissible. See Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Moreover, the form of the confrontation was impeccable.

■ Defendants additionally assign as error the Court's denial of defendants' motion for severance. At the time of the denial, prejudice resulting from trying the defendants together warranting severance was remote, if not inconceivable. The passing of the trial, in retrospect, clearly supports the denial.

Finally, included among defendants' assignments of error are references to the instructions of the Court. Specifically, defendants regard as erroneous the Court's definitions of "willfully", "disbursement", and "labor organization". These assignments are those which merit the most comment. With regard to the definition of "willfully", the defendants contend, (1) that the Court's charge was confusing and (2) that the Court's charge misstated the law. The defendants contend that the Court's charge was confusing in that in the preliminary charge "willfully" was defined to mean with evil or bad purpose, while in the final charge "willfully" was defined to mean simply with reckless disregard for the law. This contention is not entirely accurate. In the final charge, the Court explained to the jury that the term "willfully" included an act with evil or bad purpose, but that, more broadly, it included an act in reckless disregard for the law or the provisions of the law. The Court further explained that for an act to be willful, it need not necessarily be with evil or bad purpose; that an act found to be with careless disregard of whether or not one has the right to act is an act which is "willful". Certainly the final charge, which was by nature more elaborate and elucidative than the preliminary charge, presented a clear definition of the meaning of the term "willfully".

■ ■ Further, it is clear that violations of the Labor-Management Reporting and Disclosure Act are not required to be with evil or bad purpose. The acts proscribed are *malum prohibitum* misdemeanors, which acts are generally made unlawful if done with reckless disregard for the law. See United States v. Ryan, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956). The charged offenses, therefore, are, as the jury was instructed, violable by acts which are "wholly in disregard of what the law may provide, and in pursuit of a course without making a reasonable effort to determine whether the plan pursued was contrary to law".[6] See Brennan v. United States, 240 F.2d 253 (C.A.8, 1957), cert. den'd 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 723 (1957); Korholz v. United States, 269 F.2d 897 (C.A.10, 1959).

■ ■ The importance of the construction of the term "disbursement" is that it is crucial to the determination of whether or not the vouchers submitted by Pellegrini and Halvonik were records required to be kept by § 436 of the Act.[7]

6. Recently, in United States v. International Minerals & Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (June 1, 1971), the Supreme Court held that a misdemeanor was committed "knowingly" if the act committed suggested, by its nature, a probability of regulation so great that the actor must be presumed to be aware of the regulation. In that sense, "knowingly" is analogous with "willfully" as that term is used in making certain acts misdemeanors.

7. Generally, § 439(c) makes it unlawful to falsify an entry required to be kept by § 436. Section 436 provides that,

The defendants argue that no "disbursement" was made from the District Treasury because the members of the Executive Board of District 5 were the trustees of all monies of the District. The argument continues that because the money involved was at all times in the hands of one or another of the members of the Board, it was held in trust. The Court's charge instructed the jury that this argument "should not alter [its] findings in any respect". While it may be that a member of the Board who holds money pending its future expenditure acts as a trustee, a member of the Board who receives money purportedly for reimbursement of a past expenditure most assuredly does not act as a trustee. Thus, the Court charged that a "disbursement" was made if it was found that a check was issued in reimbursement of a false voucher. And since it was uncontroverted that a check was issued in reimbursement of a false voucher, the Court while it did not withdraw the matter from the jury, suggested that the jury should find that there was a "disbursement". We think, that this evidentiary interpolation of a fairly technical matter was not only sound, but necessary.

■ The defendants further argue, strenuously, if futilely, that District 5, United Mine Workers is not a "labor organization" within the meaning of the Labor-Management Reporting and Disclosure Act. This argument typifies defendants' straw-grasping. The proof of the Government squarely brought District 5 within the statutory definition. Section 402(i) of the Act defines "labor organization" as

" * * * any organization of any kind, any agency or employee representation committee, group, association, or plan so engaged ["in an in-

dustry affecting commerce"] in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council, so engaged which is subordinate to a national or international labor organization. * * * "

The testimony at trial was that District 5 represented employees concerning grievances and labor disputes and that it was an organization in which employees, as distinguished from management, participated. The contention that its lack of individual, i. e., personified, membership is totally irrelevant. Further, that it was engaged in an industry affecting commerce was substantiated by testimony that it was the certified representative of employees under the National Labor Relations Act.[8] Thus the facts and the law left no doubt that District 5 was a "labor organization".

In conclusion, the verdicts were neither against the law, the evidence, or the weight of the evidence, as defendants assert, and the motions for a new trial are denied.

## II. MOTIONS FOR JUDGMENT OF ACQUITTAL

■ The thrusts of the defendants' motions for judgment of acquittal are two—(1) that there was no evidence of a "disbursement" and (2) that there was no evidence that the vouchers submitted were records which were required to be kept. The matter of whether or not a disbursement was proved has already been reviewed. The matter of whether or not there was evidence sufficient to

---

"[E]very person required to file any report under this subchapter [i. e., labor organizations] shall maintain records [including 'vouchers'] on the matters required to be reported. * * * "

In turn, Section 431(b) requires labor organizations to report on, *inter alia,* "disbursements". Thus, a false voucher

of a disbursement is unlawful under § 439(c).

8. Section 402(j) provides that a labor organization "shall be deemed to be engaged in an industry affecting commerce" if it is the certified representative of employees under the National Labor Relations Act.

submit to the jury the question of whether or not the vouchers were records which were required to be kept is equally as easily disposable. The evidence of the records required to be kept resulted from the testimony of Government witness John Murphy. The Assistant Director for the Division of Reports and Analysis, Office of Labor Management, Welfare Pension Reports, U. S. Department of Labor, Murphy testified that in his expert opinion vouchers of the kind involved in the instant information were required to be kept under the Act. He indicated that the premise of his opinion was that § 431(b) requires a labor organization to submit a report of, *inter alia,* its "disbursements", and that § 436 requires a labor organization to retain *inter alia,* the "vouchers" which support its disbursements. Continuing, he testified that in his opinion the documents submitted by Pellegrini and Halvonik were vouchers used to support disbursements. This evidence clearly established that the vouchers were records required to be kept under § 436.

Generally, the evidence adduced at the trial was abundantly sufficient to sustain the convictions, and the motions for judgment of acquittal are denied.

### III. MOTIONS FOR ARREST OF JUDGMENT

■ The motions for arrest of judgment are based essentially on two arguments—(1) that the submitted vouchers are not, as a matter of law, required to be kept under the Act and (2) that § 436 is unconstitutionally vague. Both of these arguments must be considered only in the light of the information and the verdict. United States v. Sisson, 399 U. S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). In that light, the rulings of Judge Gerald J. Weber on the defendants' motions to dismiss the indictment, which were identically based, are the "law of the case" and cannot be disturbed. United States v. Wheeler, 256 F.2d 745 (C.A.3, 1958). Nor should they be. Accordingly, the motions for arrest of judgment are denied.