Edward **MONBORNE** et al., Plaintiffs,

v.

**UNITED MINE WORKERS OF AMERICA** et al., Defendants.

Civ. A. No. 71–690.

United States District Court,
W. D. Pennsylvania.

May 10, 1972.

719

Kenneth Yablonski, Washington, Pa.,
Joseph Yablonski, Washington Research

Project, Washington, D. C., Patrick H. Washington, Johnstown, Pa., for plaintiffs.

Harrison Combs, Washington, D. C., Eugene A. Creany, Ebensburg, Pa., for defendants.

## OPINION and ORDER

McCUNE, District Judge.

This is an action by certain members of the United Mine Workers of America (hereinafter UMW) brought under the Labor-Management Reporting and Disclosure Act of 1959, § 304, 29 U.S.C.A. § 464 (hereinafter LMRDA) seeking the dissolution of an alleged trusteeship imposed by the United Mine Workers of America on District 2 of the United Mine Workers of America. Defendant UMW has moved to dismiss the complaint for legal insufficiency and lack of jurisdiction. Plaintiffs have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion to dismiss is denied and plaintiffs' motion for summary judgment is granted.

Jurisdiction is in this court under authority of § 304(b) of the LMRDA. The admitted principle place of business of the organization in trusteeship (District 2 UMW) is Ebensburg, Pennsylvania, a city within the Western District of Pennsylvania. The agents of the defendant UMW, appointed to operate District 2, conduct the affairs of the district from the Ebensburg Offices.

The background of this litigation is immersed in the history of the UMW which is found in the exhibits to the affidavit of John Owen, Secretary-Treasurer of the UMW, submitted by defendants in opposition to the motion for summary judgment. Consideration of the briefs and the arguments of counsel leads to a conclusion that the parties do not seriously dispute the factual accuracy of Owens' affidavit and the numerous exhibits attached to his affidavit.

From an early time (the early 1920's) the UMW was divided into geographical areas called districts. These districts operated in largely independent fashion. The result was considered unsatisfactory because varying levels of wages existed in various districts. In the 1920's several districts suffered as well as a consequence of corrupt or incompetent officers and the operation of these districts was assumed by the UMW. The economic effect of the depression of the 1930's jeopardized many other districts requiring the UMW to assume supervision of them and finally almost all districts were under the control of the International Union including District 2. Only a few districts remained autonomous. The excerpts from UMW Conventions attached as exhibits to the affidavit of John Owens reveal the circumstances that resulted in the supervision of almost all districts and the fear of the International officers that a return of automony to the districts would lead to corruption and a disparity in basic wage levels in the various districts. The national leadership frequently spoke of its belief that the exercise of autonomy in the various districts had not produced a strong central union and the leadership, while espousing a democratic form of district control decided to return control of the districts to its members within its sole discretion. In fact the idea that centralized control was essential to the welfare of the union was hammered home by the national leadership each time the issue of autonomy was raised at every national convention from 1934 to 1968. The theme was that autonomy should be available but only at such time and under such conditions as the national leadership deemed appropriate. It does not appear that there was any intention to make any change in the fundamental structure of the UMW, that is to make the union into a two-tiered rather than three-tiered organization. It was to remain a three-tiered organization (the international, the various districts and the locals within the districts) and districts were to have autonomy but only when the leadership was satisfied that it should be granted.

It is not contested that there are autonomous districts today, *e. g.,* District 5. Such districts are distinguishable from the supervised districts (called provisional districts by defendants) only in that officers are elected by the UMW members within the geographical boundaries of the autonomous districts. Officers in the supervised districts are appointed by the president of the International. Both the supervised and autonomous districts bargain on matters of local concern, engage in grievance disputes of all kinds and provide the members in the district with the services provided by any labor organization.

The enactment of the LMRDA followed the uncovering by the McClellan Committee of corrupt and oppressive conditions in some unions. The LMRDA contains various provisions designed to remedy these problems. Essential to the remedial scheme is the assurance of functional democratic procedures within unions. Titles I (Bill of Rights of Members of Labor Organizations), III (Trusteeships), and IV (Elections) of LMRDA are all concerned with the fostering and preservation of democracy within unions. We are directly concerned only with Title III in this litigation.

The committee reports, S.Rep. No. 187, 87th Cong., 1st Session, p. 16–17, H.R.Rep. No. 741, 87th Cong., 1st Session, p. 13–14, recognized the importance of trusteeships to insure order within unions but also recognized the danger inherent in trusteeships:

"However, labor history and the hearings of the McClellan committee demonstrate that in some instances trusteeships have been used as a means of consolidating the power of corrupt union officers, plundering and dissipating the resources of local unions, and preventing the growth of competing political elements within the organization." H.R.Rep. No. 741, 87th Cong., 1st Sess., p. 13.

The Congress concluded that existing remedies were inadequate to offset the potential for abuse in this area. It therefore provided in section 302 of the LMRDA, 29 U.S.C.A. § 462 certain general limitations on the reasons for which a parent union could legitimately impose trusteeship on a subordinate body.

"Trusteeships, shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C.A. § 462.

The LMRDA allows enforcement either by the Secretary of Labor bringing suit, or by the individual union members bringing suit:

"(a) Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this subchapter (except Section 461 of this title) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization. . . . Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction . . . . " LMRDA, § 304(a), 29 U.S.C.A. § 464(a).

In addition to limiting the reasons for imposition of trusteeships the LMRDA also puts a qualified limitation on the length of time that a parent organization may mantain a trusteeship.

"In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws . . . . shall be presumed valid for a period of eighteen months from the date of its establishment. . . . After the expiration of eighteen months the trusteeship shall be decreed invalid in any such proceeding and its discontinuance shall be decreed unless the labor organization shall show by clear and convincing proof the continuation of the trusteeship is necessary for a purpose allowable under Section 462 of this title." LMRDA § 304(c), 29 U.S.C.A. § 464(c).

The facts of our case appear to come within the intent of Title III. The national (UMW) assumed complete supervisory control over District 2 some 30 years ago and continues to exercise such control today.

■ The argument of UMW is that District 2 is not a labor organization, but is merely an administrative arm of the international. It might be said that local unions are also administrative arms of the international organization but we do not believe this makes them any the less labor organizations. Nor are the districts any less labor organizations merely because they are administrative arms of the international. The district organizations bear all the characteristics of a labor organization. As already pointed out they settle labor disputes with employers concerning hours of work, conditions of employment, and many other subjects. They meet the definition contained in the Act.[1]

■ Defendants also argue that the supervisory control exercised by UMW over District 2 is not a trusteeship within LMRDA. Trusteeship is defined by § 3(h) as:

"Trusteeship means any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution and bylaws." § 3(h) LMRDA, 29 U.S.C.A. § 402(h).

Their position is that there is no "autonomy otherwise available." The affidavit of Secretary-Treasurer John Owens utterly refutes this position. The excerpts from UMW Conventions beginning in 1934 reflect a concern over district autonomy and the establishment of conditions under which autonomy would eventually although reluctantly be returned to the districts.

Defendants' real argument is, and this is apparent from the papers submitted by defendant in opposition to the motion for summary judgment, that the national union has been successfully run this way for a long time, that it is in the best interest of the national to continue this way and that this court should ignore the directive of Congress which is in direct conflict with the policy of the International.

■ It is unnecessary to debate the question whether the UMW is well operated or whether the appointed officers

---

1. " 'Labor organization' means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.' § 3(i) LMRDA, 29 U.S.C.A. § 402(i).

See Antal v. Dist. 5 UMW, 451 F.2d 1187 (3d Cir. 1971) aff'g, 334 F.Supp. 903 (W.D.Pa.1971); Lavender v. UMW, 285 F.Supp. 869, 874 (S.D.W.Va.1968); United States v. Budzanoski & Seddon, W.D.Pa., 331 F.Supp. 1201, and Hodgson v. UMW, Dist.Ct. for the Dist. of Columbia, 344 F.Supp. 17 (1972). This court has ruled the same way in Jones & Laughlin Steel Corp. v. UMW (Civil Action No. 71–566 W.D.Pa.).

of District 2 are capable men. District 2 has been deprived of autonomy otherwise available to it for a period of more than eighteen months. The national union has not even alleged that this deprivation is for any of the grounds permissible under § 302 of the LMRDA. Fear that the members of a district will elect officers who are incompetent or corrupt has been rejected as a basis for making exceptions to the policy of the LMRDA favoring intraunion democracy, *Wirtz v. Hotel, Motel & Club Employees Union*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (reasonableness of election qualification under Title IV of LMRDA).

■ By the enactment of LMRDA Congress has established a policy that the leadership of unions is best determined by the rank and file members exercising their common sense and good judgment in democratic elections.

■ Defendants have argued that there exist procedures within the UMW for re-establishment of district autonomy and plaintiffs' failure to employ these procedures bar them from relief here. The decision of the 10th Circuit in United Brotherhood of Carpenters and Joinders of America v. Brown, 343 F.2d 872 (10th Cir. 1965) held that a plaintiff need not exhaust intraunion remedies before bringing suit under § 304 of LMRDA. The *Brown* decision was cited with approval by the Third Circuit in Purcell v. Keane, 406 F.2d 1195 at 1199 (3d Cir. 1969). In *Purcell* the Third Circuit refused to engraft an exhaustion of remedies requirement into titles of LMRDA which did not expressly contain such provisions. *Purcell* has been reaffirmed recently in Sabolsky v. Budzanoski, 457 F.2d 1245 (3rd Cir. decided March 27, 1972). See also Lavender v. UMW, 285 F.Supp. 869 at 871–872 (S.D.W.Va.1968). We conclude that there is no requirement under § 304 for a plaintiff to pursue administrative remedies, either within the union or before the Department of Labor before commencing suit under Title III of LMRDA.

We are not unmindful that the matter here resolved is of substantial public importance. Our decision here strikes at the fundamental method of operation of one of our nation's more substantial unions. But the public significance of the issues involved is not a bar to summary judgment.

"Resolution of legal issues is for the court, and will not be rendered easier by going through the futile motions of a trial when there is no issue of fact to be tried." 6 J. Moore, Federal Practice, ¶56.16 at 2447 (2d ed. 1966).

■ The litigants in the instant case are at odds over the legal conclusions to be drawn from a clear set of facts. In such a situation it is the duty of this court to render judgment where the record is sufficient for that purpose.

■■ The contention of defendants that laches should bar this action is not considered meritorious. There has been a continuing violation of the Act ever since its adoption and the contention that the complaint fails to meet the requirements of Rule 23.2 is also rejected. Section 304 (29 U.S.C.A. § 464) states that any member or subordinate body of a labor organization affected by any violation of this title (except Section 301) may bring a civil action in any district court for such relief as may be appropriate. The complaint was filed by several members of the union and this is all that is required to place jurisdiction within this court. The fact that the action was called a class action is unimportant.

Because this opinion will require that the trusteeship be set aside and an election of district officers conducted at some practicable time in some practicable manner after adequate planning, the plaintiffs shall submit a proposed order intended to effect that result. The order will be subject to such amendment as the court considers proper after conference with the parties to this proceeding. The proposed order shall be submitted within thirty days from the date of the filing of this opinion.