James D. **HODGSON**, Secretary of Labor, Mike Trbovich et al., Appellants,

v.

**UNITED MINE WORKERS OF AMERICA.**

No. 72–1709.

United States Court of Appeals, District of Columbia Circuit.

Nov. 13, 1972.

---

See also 154 U.S.App.D.C. ——, 475 F.2d 1293.

Messrs. Edward L. Carey, William P. Owens and Charles L. Widman, Washington, D.C., were on appellee United Mine Workers of America's motion to dismiss.

Messrs. Joseph A. Yablonski, Clarice Feldman and Joseph L. Rauh, Jr., Washington, D.C., were on appellants' response to motion to dismiss and appellants' motion for summary reversal.

Messrs. Walter H. Fleischer and Michael H. Stein, Washington, D.C., were on the Secretary of Labor's opposition to the motion for summary reversal.

On Motion of Appellee United Mine Workers of America to Dismiss and Motion of Appellants for Summary Reversal

Before TAMM and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal presented a motion by proposed intervenors, members of the United Mine Workers of America (UMWA), for summary reversal of an order of the District Court denying them leave to intervene as a matter of right[1] in a suit brought by the Secretary of Labor against the UMWA[2] pursuant to Title III of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA).[3] The UMWA moved to dismiss the appeal on the ground that appellants failed to file a timely notice of appeal,[4] and the Secretary has resisted the motion on the merits. We have heretofore denied the motion to dismiss and granted the motion for summary reversal, our order stating that our opinion would follow as soon as the business of the court permitted. We now delineate the reasons for our disposition.

I

On the basis of written complaints submitted by members of the UMWA,[5] the Secretary of Labor initiated a suit in the District Court on December 16, 1964, seeking under Title III of the LMRDA[6] to lift allegedly unlawful trusteeships[7] which had been imposed by the UMWA on seven districts since the 1920s and the 1930s. The twenty-two districts of the UMWA constitute the middle level of its three-tiered structure, and seventeen of these are in trusteeship, or what the UMWA terms "provisional" status, that is, they have no popularly elected officers.[8] Appellants

---

1. See Fed.R.Civ.P. 24(a)(2).

2. Civil No. 3071–64 (D.D.C., filed Dec. 15, 1964).

3. Pub.L. No. 86–257, § 301 et seq., 73 Stat. 530–32, 29 U.S.C. § 461 et seq. (1970).

4. See Fed.R.App.P. 4(a).

5. The complaint procedure is described in LMRDA § 304(a), 29 U.S.C. § 464(a) (1970).

6. Id.

7. A "trusteeship" is defined as "any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or by laws." LMRDA § 3(h), 29 U.S.C. § 402(h) (1970).

8. The provisional district presidents and secretary-treasurers are appointed by the UMWA International President. The provisional district executive board members are nominated by a committee appointed by the International President and elected at the UMWA's International Conventions.

are members of six of the seven such districts which are the subjects of this litigation.[9]

Title III of the LMRDA limits the purposes of trusteeships to "correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." [10] A presumption of invalidity attaches to any trusteeship in existence more than eighteen months, and this may be rebutted only by clear and convincing proof that its continuation is necessary for a statutorily allowable objective.[11] Title III also provides for a dual enforcement procedure which permits actions either by the Secretary [12] or by union members themselves [13] to challenge trusteeships as invalid.[14] However, once suit has been filed by the Secretary, exclusive jurisdiction over the trusteeship is vested in the district court in which the filing occurs.[15]

The litigation here has spanned the terms of three Secretaries of Labor and did not come to trial until July, 1971, nearly seven years after its initiation. Following the trial, the District Court, on July 22, 1971, took the case under advisement. Appellants filed their first motion for leave to intervene on January 21, 1972, prior to issuance of its decision.

Appellants based their application for intervention on Trbovich v. United Mine Workers of America,[16] decided January 17, 1972, in which the Supreme Court held that Trbovich, an appellant here, could intervene as of right in an action by the Secretary challenging UMWA elections under Title IV of the LMRDA.[17] Like the situation here, the election case [18] had been tried and was under advisement when the Court ordered the District Court to allow the intervention.

On March 10, 1972, the District Court issued an order in the instant case denying appellants' motion for intervention as untimely. For some unexplained reason, none of the parties received notice of this order,[19] and appellants did not become aware of its existence until May 24, when the District Court filed its opinion holding that the trusteeships had been unlawfully maintained. Upon discovering that their application had

---

9. The districts involved are 4, 6, 17, 23, 25, 30, and 31. Each of the six appellants, who are reform party leaders, is a member of a local in one of the six districts other than District 30, and a member of that district and of the UMWA. Each sought intervention individually and on behalf of all members within their respective districts who desire prompt district-wide elections for district officers and representatives.

10. LMRDA § 302, 29 U.S.C. § 462 (1970).

11. LMRDA § 304(c), 29 U.S.C. § 464(c) (1970).

12. LMRDA § 304(a), 29 U.S.C. § 464(a) (1970).

13. *Id.*

14. The limited purpose of trusteeships, the presumption of invalidity and the dual enforcement mechanism, when considered together, evidence a strong legislative interest in dismantling oppressive trusteeships, particularly those of long duration.

15. LMRDA § 306, 29 U.S.C. § 466 (1970). This provision for exclusive jurisdiction renders any litigation initiated by the Secretary of particular importance to union members in the affected districts since they will be bound by the results.

16. 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).

17. *Id.* at 539, 92 S.Ct. 630. The interrelationship between the election suit and this litigation is discussed at note 20, *infra.*

18. Hodgson v. UMWA, 51 F.R.D. 270 (D.D.C., filed Mar. 5, 1970).

19. Under Fed.R.Civ.P. 77(d), immediately upon entry of an order or judgment the clerk is required to serve notice of the entry on all parties by mail. By the terms of the rule, failure to receive such notice does not affect the time for appeal, which begins to run from the date of entry.

been denied, appellants filed a new motion to intervene on June 5, along with a request, predicated on Rule 60(b) of the Federal Rules of Civil Procedure, for relief from the March 10 order because of the absence of notice. In the period between the order of March 10 and the filing of the new motion, the District Court had issued its opinion [20] and had requested a proposed decree from the Secretary, and an opinion had also issued in the election case, deciding it on the merits.[21]

On June 20, the District Court denied the second application for intervention on the earlier-stated ground that it was untimely and on the additional ground that the Secretary of Labor adequately represented appellants' interests. On July 18, appellants filed notice of this appeal, and thereafter their motion seeking summary reversal of that order.

## II

The question whether this court has the jurisdiction to entertain this appeal was raised by the UMWA's motion to dismiss. It pointed to the expiration of the jurisdictional period for filing notice of appeal, when measured from the District Court's March 10 order denying appellants' first motion for intervention. But the UMWA failed to deal with the fact, demonstrated by the record, that appellants' notice of appeal specifically identifed as its subject the June 20 order denying their *second* motion for intervention, and that, as to the latter order, it was filed well within the allotted period.

Rule 4(a) of the Federal Rules of Appellate Procedure requires that a notice of appeal in a civil case be filed within thirty days of the entry of the order appealed from, unless the United States is a party, in which case a notice of appeal may be filed within sixty days of the order.[22] Upon a showing of excusable neglect, the District Court may extend the time for filing a notice of appeal for a period not exceeding thirty days from the expiration of the time otherwise prescribed by the rule.[23] Such an extension may be granted either before or after the prescribed time period has run.[24]

In the present case, owing to the apparent failure of the clerk to give them notice,[25] appellants did not discover the March 10 order until May 25, after the court had rendered its opinion and requested the Secretary to submit a proposed decree. The sixty-day period designated by Rule 4(a) had already expired at that time,[26] and even if appellants had immediately sought a thirty-day extension on grounds of excusable neglect,[27] the time for filing their notice

---

20. Hodgson v. UMWA, 344 F.Supp. 990 (D.D.C., May 24, 1972).

21. The interrelationship of this trusteeship litigation and the election case is pointed up by the District Court's opinion in the latter. See Hodgson v. UMWA, 80 L.R.R.M. 2145 (1972). The opinion stressed the number of districts in trusteeship and noted that in such districts the unlawful attempts by officers to influence election results were particularly serious since the officers were appointed by the International President and were personally responsible to him rather than to the rank and file. 80 L.R.R.M. at 2153–2154. It is clear that the effectiveness of the relief fashioned in the election case is very much dependent on what measures the District Court adopts in this case for dissolving existing unlawful trusteeships.

22. Fed.R.App.P. 4(a).

23. *Id.*

24. *Id.*

25. Fed.R.Civ.P. 77(d) provides:
 Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing.

26. The period for filing notice of appeal expired on May 9, 1972.

27. Former Fed.R.Civ.P. 73(a), the predecessor of Fed.R.App.P. 4(a), was amended to authorize the thirty-day excusable neglect extension where lack-of-notice problems arise. See Advisory Committee Note to Fed.R.Civ.P. 73(a) (1966 amend.); Lord v. Helmandollar,

of appeal would have terminated on June 8. Appellants did not seek an extension, but chose instead to file a second motion for intervention and alternatively for relief under Civil Rule 60(b) from the March 10 order. The Rule 60(b) relief asked for was an order expunging the March 10 order and reentering it anew with a view to reopening the appeal period.[28] This motion was filed on June 5, and denied by the District Court on June 20. On July 18, appellants' notice of appeal from the June 20 order was taken and, for purposes of review of that order, it was timely.

It is well settled that there is no jurisdiction to hear appeals not filed within the time limits set by Rule 4(a).[29] It is equally clear that motions filed under Rule 60(b) for relief from a judgment or order do not toll the time for filing a notice of appeal from such judgment or order.[30] Nor can Rule 60(b) be used to circumvent time requirements by the simple expedient of vacating a judgment and reinstating it in order to start anew the running of the appeal period.[31] The harsh result occurring where, as here, counsel has not received Rule 77(d) notice can only be mitigated by a prompt request for a thirty-day extension under Rule 4(a).[32] Counsel then representing appellants made no such request, and as we have seen, a request for

---

121 U.S.App.D.C. 168, 170, 348 F.2d 780, 782 (1965), cert. denied, 383 U.S. 928, 86 S.Ct. 929, 15 L.Ed.2d 847 (1966).

28. We note at this point that the District Court was powerless to grant that sort of relief. A motion under Rule 60(b) does not disturb the finality of the judgment from which relief is sought, nor does it toll the running of the time for filing notice of appeal under Fed.R.App.P. 4 (a). It cannot be used to vacate judgments and reinstate them to start the time for appeal anew. See note 30, *infra*, and accompanying text. The only issue which can be raised on appeal from a denial of Rule 60(b) relief is the propriety of that denial, and not the merits of the judgment from which the relief was sought. See Wagner v. United States, 316 F.2d 871, 872 (2d Cir. 1963); Saenz v. Kenedy, 178 F.2d 417, 419 (5th Cir. 1950); In re Marachowsky Stores Co., 188 F.2d 686, 689 (7th Cir.), cert. denied, 342 U.S. 822, 72 S.Ct. 41, 96 L.Ed. 622 (1951); Smith v. Stone, 308 F.2d 15, 17 (9th Cir. 1962).

29. Timely filing of a notice of appeal was mandatory and jurisdictional under old Rule 73(a), and it is under new Fed. R.App.P. 4(a). Weedon v. Gaden, 136 U.S.App.D.C. 1, 5, 419 F.2d 303, 307 (1969); Lord v. Helmandollar, *supra* note 27, 121 U.S.App.D.C. at 170, 348 F.2d at 782; Whitehead v. American Sec. & Trust Co., 109 U.S.App.D.C. 202, 206, 285 F.2d 282, 286 (1961); Slater v. Peyser, 91 U.S.App.D.C. 314, 315, 200 F.2d 360, 361 (1952); Randolph v. Randolph, 91 U.S.App.D.C. 170, 172, 198 F.2d 956, 958 (1952).

30. Weedon v. Gaden, *supra* note 29, 136 U.S.App.D.C. at 5 n. 26, 419 F.2d at 307 n. 26. The only post-judgment motions which do toll the time for filing notice of appeal are those specifically enumerated in Fed.R.App.P. 4(a): motions under Rules 50(b), 52(b), 59(a), and 59(c).

31. Weedon v. Gaden, *supra* note 29, 136 U.S.App.D.C. at 6 n. 31, 419 F.2d at 308 n. 31; Lord v. Helmandollar, *supra* note 27, 121 U.S.App.D.C. at 170, 348 F.2d at 782; Demers v. Brown, 343 F.2d 427, 428 (1st Cir.), cert. denied, 382 U.S. 818, 86 S.Ct. 40, 15 L.Ed.2d 64 (1965); Wagner v. United States, *supra* note 28, 316 F.2d at 872. The practice of vacating a judgment and then reinstating it for purposes of allowing time to file a notice of appeal was upheld by the Supreme Court in Hill v. Hawes, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944). But in the 1946 amendment to Rule 77(d), the following sentence was added:

Lack of notice of the entry by the clerk does not affect the time to appeal or relieve *or authorize the court to relieve a party for failure to appeal within the time allowed*, except as permitted in Rule 4(a). (emphasis added).

As the Advisory Committee Note to the 1946 amendment expressly states, its purpose was, in effect, to overturn Hill v. Hawes, *supra*, and the potential power it had given district courts to revive a right of appeal at any time. Advisory Committee Note to Fed.R.Civ.P. 77(d) (1946 amend.). See also Lord v. Helmandollar, *supra* note 27, 121 U.S.App.D.C. at 170, 348 F.2d at 782.

32. See note 31, *supra*. The Advisory Committee Note to Rule 77(d) points out:

Rule 77(d) as amended makes it clear that notification by the clerk of the entry of a judgment has nothing to do

relief under Rule 60(b) is not a means of extending the time for appeal.[33]

 In the final analysis, the question of jurisdiction must be resolved by ascertaining whether the June 20 order, from which this appeal was taken, was merely a reinstatement of the court's March 10 ruling, or whether it constituted a new determination by the District Court reached under circumstances materially changed from those existing in March. If the later order was only an attempt to revive the earlier order, it did not start the time for appeal all over again.[34] But if, on the other hand, it was in essence a new decision on appellants' motion for intervention, the District Court's June 20 denial is properly before us. It is well settled that in ruling on an application for intervention,[35] the court is required to exercise a considerable degree of discretion.[36] Moreover, the various factors which guide the exercise of that discretion may change substantially as the litigation progresses.[37] Where, as here, a court's ruling has discretionary elements based on circumstances which are subject to alteration, the law recognizes the power and responsibility of the court to reconsider its ruling if a material change in circumstances has in fact occurred.[38] We are of the opinion that

---

with the starting of the time for appeal; that time starts to run from the date of entry of judgment and not from the date of notice of the entry. Notification by the clerk is merely for the convenience of litigants. And lack of such notification in itself has no effect upon the time for appeal. . . .
Advisory Committee Note to Fed.R.Civ.P. 77(d) (1946 amend.).

33. See notes 28, 30, *supra*, and accompanying text.

34. See note 31, *supra*.

35. Rule 24 provides for intervention either as of right or by permission:
(a) Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
(b) Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
Fed.R.Civ.P. 24(a)–(b).

36. Even where intervention of right is sought under Rule 24(a)(2), as here, the court must exercise its discretion in determining whether the application is timely made and whether the proposed intervenor's interest is adequately represented by existing parties. See Fed.R. Civ.P. 24(a)(2), *supra* note 35; 3B J. Moore, Federal Practice ¶ 24.13[1] at 24–524 (2d ed. 1969). Permissive intervention under Rule 24(b), sought in the alternative by appellants here, is discretionary by definition. See Fed.R.Civ. P. 24(b), *supra* note 35; 3B J. Moore, Federal Practice ¶ 24.10[4] at 24–391 (2d ed. 1969).

37. The impact of changed circumstances upon an application for intervention may be illustrated by a simple example. In litigation involving A against B, C applies to intervene on A's side as of right under Rule 24(a)(2). The court decides that C's interests are adequately represented by A and denies the application. At some later time, A becomes lax in his prosecution of the case, thereby jeopardizing C's interests. An application by C at this time would warrant a different determination by the court as to the propriety of C's intervention.

38. The power of the court to reconsider various rulings during the course of the

the District Court's order denying appellants' second application for intervention falls within the ambit of this principle.

On January 21, 1972, appellants sought intervention as of right or, in the alternative, permissive intervention. Their application was denied on March 10, and the only reason given by the court for the denial was untimeliness. On June 5, applicants renewed their motion for intervention.

In the four months which elapsed between the first and second applications, two events occurred which we believe warranted the District Court's reconsideration of the question of intervention. The more important of these was the entry of the District Court's opinion in the instant case on May 24, 1972, holding the trusteeships invalid and requesting the Secretary to file a proposed decree. Plainly this occurrence added new urgency and weight to appellants' application, since it bore out their claim that the trusteeships were unlawful, and without intervention neither they nor other union members would have a voice in fashioning the relief to be afforded in their districts.

■ The second significant event was the entry of the District Court's opinion on May 1, 1972, in the election case. As we have noted,[39] the nature of the remedial measures to be formulated in that case, in which appellant Trbovich is an intervenor, was in great part contingent on the nature of the resolution achieved in the trusteeship litigation. We believe these two events, taken together, substantially changed the context in which appellants last moved for intervention, thereby justifying and indeed requiring the District Court's reconsideration of their application.

■ The June 20 order denying the second motion adhered to the earlier March 10 ruling that the request was untimely, but it added a second reason for the denial: a finding that the Secretary adequately represented the proposed intervenors' interests. Surely, with the inclusion of that additional reason in the June 20 order, ostensibly in light of the changed circumstances, it cannot be seriously contended that the court merely vacated and reinstated the March 10 ruling. We are satisfied that the June 20 order was not simply an at-

litigation is itself a facet of judicial discretion. Decisions on motions do not necessarily have the force of res judicata; courts possess the discretion to permit second applications where the circumstances of the case so dictate. In re Walton Hotel Co., 116 F.2d 110 (7th Cir. 1940). It is a well established rule that a district judge always has the power to modify or to overturn an interlocutory order or decision while it remains interlocutory. Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir.), cert. denied, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963). Accord, Pearson v. Dennison, 353 F.2d 24, 28 (9th Cir. 1965); Beedy v. Washington Water Power Co., 238 F.2d 123, 127 (9th Cir. 1956); Breeland v. Southern Pac. Co., 231 F.2d 576, 579 (9th Cir. 1955); Woods Exploration & Producing Co. v. Aluminum Corp. of America, 284 F.Supp. 582, 585 (S.D. Tex.1968), rev'd on other grounds, 438 F.2d 1286 (5th Cir. 1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed. 2d 736 (1972); Ward v. Louisiana Wild Life & Fisheries Comm'n, 224 F. Supp. 252, 255 (E.D.La.1963), aff'd, 347 F.2d 234 (5th Cir. 1965).

While most of the cases in this area deal with the district court's authority to reconsider a previously denied motion for summary judgment, the rule seems equally applicable to any motion involving facts which may change or may not even come to light until the litigation is well advanced. See 1B J. Moore, Federal Practice ¶ 0.404[4] at 451–452 (2d ed. 1965). An analogous rule is the familiar equitable principle which enables the court to retain jurisdiction over child-custody and -support cases where future events may warrant the modification of its decrees. See, e. g., Howze v. Howze, 128 U.S.App.D.C. 204, 205, 385 F.2d 986, 987 (1967); Dawn v. Dawn, 90 U.S.App.D.C. 226, 227–228, 194 F.2d 895, 896–897 (1952); Boone v. Boone, 80 U.S. App.D.C. 152, 154, 150 F.2d 153, 155 (1945); Cook v. Cook, 77 U.S.App.D.C. 388, 389, 135 F.2d 945, 946 (1943).

39. See note 19, supra.

tempt by the court to help appellants overcome the barrier posed by the expired time limit on appealing the March 10 order, but that it constituted a fresh evaluation of the intervention application, well within the discretionary power of the District Court to make, and amenable to review on the merits by this court.[40]

## III

On the merits, we are called upon to assess appellants' effort to intervene as a matter of right pursuant to Rule 24(a)(2)[41] in an action prosecuted by the Secretary against the UMWA under Title III of the LMRDA.[42] Here, as in their applications as proposed intervenors in the District Court, appellants argue that their case comes within the standard set by the Supreme Court in Trbovich v. UMWA,[43] which granted limited intervention as of right to union members in election suits brought under Title IV of the LMRDA.[44] Our analysis of *Trbovich* leads us to conclude that it controls the case before us. Indeed, in our view, the Title III litigation here presents an even more compelling case for granting intervention to union members than did the Title IV litigation in *Trbovich*.

The Court began its examination of the issues in *Trbovich* by observing that Title IV of the LMRDA vests solely in the Secretary the power to bring litigation challenging union elections.[45] Title IV makes no express mention of suits by union members, and the Court had previously held that it bars them from initiating such actions.[46] Nevertheless, nothing on the face of Title IV sheds any light on the question of intervention,[47] and in the absence of guidance from the language of the statute, the Court in *Trbovich* was required

---

40. Denials of motions under Rules 24(a) and 24(b) are treated somewhat differently for purposes of determining their appealability, although in practical effect denials of either may be appealed. Where intervention is sought as of right, as it was here, a denial of the application may be appealed. Sam Fox Publishing Co. v. United States, 366 U.S. 683, 687–688, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1951); Sutphen Estates v. United States, 342 U.S. 19, 20, 72 S.Ct. 14, 96 L.Ed. 19 (1951); Brotherhood of R.R. Trainmen v. Baltimore & O. R.R., 331 U.S. 519, 524, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947); Levin v. Ruby Trading Corp., 333 F.2d 592, 594 (2d Cir. 1964); Martin v. Kalvar Corp., 411 F.2d 552, 553 (5th Cir. 1969); Mendenhall v. Allen, 346 F.2d 326, 328 (7th Cir. 1965).

Denial of a motion seeking permissive intervention may only be appealed where the trial court has clearly abused its discretion. Brotherhood of R.R. Trainmen v. Baltimore & O. R.R., *supra*, 331 U.S. at 524–525, 67 S.Ct. 1387; Allen Calculators v. National Cash Register Co., 322 U.S. 137, 142, 64 S.Ct. 905, 88 L.Ed. 1188 (1944); Mendenhall v. Allen, *supra*, 342 F.2d at 327; Edmondson v. State of Nebraska, 383 F.2d 123, 127 (8th Cir. 1967); Bumgarner v. Ute Indian Tribe, 417 F.2d 1305, 1309 (10th Cir. 1969). But, of course, the jurisdictional question whether discretion has been abused requires a determination by the appellate court on the merits so where intervention has been sought under both 24(a) and 24(b), an appeal may be taken either on the grounds that the district court denied intervention as of right or abused its discretion in denying permissive intervention. Fox v. Glickman Corp., 355 F.2d 161, 163 n. 2 (2d Cir. 1965), cert. denied, Levy v. Glickman Corp., 384 U.S. 960, 86 S.Ct. 1585, 16 L.Ed.2d 672 (1966); 3B J. Moore, Federal Practice ¶ 24.15 at 24–561–65 (2d ed. 1969). The only consequence of the restriction on appealability of Rule 24(b) motions is that on finding the district court's determination to be correct, the appellate court will dismiss the appeal rather than affirm. Levin v. Ruby Trading Corp., *supra*, 333 F.2d at 594.

41. See note 35, *supra*.

42. Pub.L. No. 86–257, § 1 et seq., 73 Stat. 519, 29 U.S.C. § 401 et seq. (1970).

43. *Supra* note 16.

44. LMRDA § 401 et seq., 29 U.S.C. § 481 et seq. (1970).

45. Trbovich v. UMWA, *supra* note 16, 404 U.S. at 531, 92 S.Ct. 630; 29 U.S.C. § 483 (1970).

46. Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

47. Trbovich v. UMWA, *supra* note 16, 404 U.S. at 531–532, 92 S.Ct. 630.

to make a careful examination of its legislative history.[48]

Contrary to the arguments advanced by the Secretary, the Court concluded that by prohibiting union members from initiating election litigation, Congress sought only to guard against frivolous claims and against lawsuits in forums or at times different from those chosen by the Secretary.[49] If intervention would frustrate these twin aims Title IV would prohibit it as well as the initiation of litigation by union members,[50] but the Court concluded that intervention would not thwart either of the legislative purposes achieved by limiting election suits to those inaugurated by the Secretary.[51]

Title III of the LMRDA, like the title which follows it, makes no mention of intervention by union members in litigation seeking to enforce its provisions. But it differs significantly from Title IV in that it permits actions challenging trusteeships to be *commenced* by union members themselves when the Secretary has brought none himself.[52] Thus, the stumbling block to intervention apparently posed by Title IV's vesting of the right to sue exclusively in the Secretary is *not* present in Title III. On the contrary, the fact that union members themselves may bring trusteeship actions argues strongly that they are not automatically precluded from intervening in such actions when brought by the Secretary. Only if the legislative history of Title III clearly evinced some contrary congressional purpose would the opposite conclusion be warranted.

The reports of the Senate,[53] House[54] and conference[55] committees on the LMRDA say nothing about intervention by union members in trusteeship litigation. The original version of the bill reported out to the Senate[56] authorized only the Secretary to initiate suits in federal courts under Title III, although union members could pursue their common law remedies in the state courts.[57] By contrast, the House version[58] enabled union members as well as the Secretary to bring federal actions challenging trusteeships.[59] The dual enforcement procedure in the House bill withstood the conference committee's scrutiny[60] and was enacted into law,[61] and so it is that Title III litigation may be initiated either by the Secretary or individual union members.[62] The only limitation is that once an action has been instituted in a district court by the Secretary, that court has exclusive jurisdiction over the trusteeship, and its final judgment is res judicata.[63]

 Having discovered no evidence reflecting a legislative purpose inimical to intervention by union members in the Secretary's suits, we must move on to a

48. *Id.* at 532, 92 S.Ct. 630.

49. *Id.* at 536, 92 S.Ct. 630.

50. *Id.*

51. *Id.* at 537, 92 S.Ct. 630.

52. LMRDA § 304, 29 U.S.C. § 464 (1970).

53. S.Rep. No. 187, 86th Cong., 1st Sess. (1959).

54. H.R.Rep. No. 741, 86th Cong., 1st Sess. (1959).

55. Conference Rep. No. 1147, 86th Cong., 1st Sess. (1959).

56. S. 1555, 86th Cong., 1st Sess. (reported out Apr. 14, 1959).

57. S. 1555, 86th Cong. 1st Sess. § 206 (1959).

58. H.R. 8342, 86th Cong., 1st Sess. (reported out July 30, 1959). U.S.Code Congressional and Administrative News, p. 2318.

59. H.R. 8342, 86th Cong., 1st Sess. § 304 (a) (1959).

60. The Conference Committee reviewed H.R. 8400, 86th Cong., 1st Sess. (1959), an amended version of H.R. 8342 which retained the provision for suits initiated by union members. The text of H.R. 8400 was then substituted for the text of S. 1555 prior to passage. See Conference Rep. No. 1147, 86th Cong., 1st Sess. (1959).

61. LMRDA § 304(a), 29 U.S.C. § 464(a) (1970).

62. *Id.*

63. LMRDA § 306, 29 U.S.C. § 466 (1970).

consideration of the requirements of Rule 24(a)(2), especially as they are treated in *Trbovich*, in order to further evaluate appellants' claim. In the present case, the District Court found the application of appellants as proposed intervenors to be untimely. With all due deference to the court's view on that matter, we must disagree. While timeliness is a prerequisite to any claim for intervention under Rule 24,[64] it is settled—particularly where intervention is sought as of right—that the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness.[65] Rather, the court should also look to the related circumstances, including the purpose for which intervention is sought, the necessity for intervention as a means of preserving the applicant's rights,[66] and the improbability of prejudice to those already parties in the case.[67]

To be sure, appellants' application for intervention was made after the action was tried, and some seven years after it was filed. But the proposed intervenors expressly disavowed any desire to reopen any previously-litigated question, and sought only to participate in the remedial, and if necessary the appellate, phases of the case. This limited goal does not appear to impose any untoward burden on the UMWA, the Secretary or the court.[68] Timeliness presents no automatic barrier to intervention in post-judgment proceedings where substantial problems in formulating relief remain to be resolved.[69] As we declared in Wolpe v. Poretsky,[70] intervention ". . . may be allowed [even] after a final decree where it is necessary to preserve some right which cannot otherwise be protected."[71] It can hardly be gainsaid that appellants have rights which could be lost irretrievably were intervention not permitted at this time.

It is clear on the face of appellants' claim that, not only as individuals but also as reformists[72] in the trusteed districts involved in this case, their interest in the scope of relief to be afforded and in the specific procedures to be set up for dissolving the invalid trusteeships possesses the substantiality required by Rule 24(a)(2). That interest is heightened by the statutorily-prescribed res judicata effect of any judgment rendered in a trusteeship suit brought by the Secretary.[73] For appellants, the litigation is now in its most critical phase

64. See note 35, *supra*.

65. Tennessee Coal, Iron & R. Co. v. Muscoda Local 123, 5 F.R.D. 174, 177 (N.D.Ala.1946).

66. Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 144, 144 F.2d 505, 508, cert. denied, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944); 3B J. Moore, Federal Practice ¶ 14.13[1] at 24–522 (2d ed. 1969).

67. Tennessee Coal, Iron & R. Co. v. Muscoda Local 123, *supra* note 62, 5 F.R.D. at 177.

68. See Trbovich v. UMWA, *supra* note 16, 404 U.S. at 536, 92 S.Ct. 630. Here the union has already been summoned into court by the Secretary to defend the validity of the trusteeships; intervention by appellants would not require any more than that. In terms of assisting in the shaping of relief, appellants clearly offer more of a benefit than burden to the Secretary.

69. Cascade Natural Gas Corp. v. El Paso Natural Gas Corp., 386 U.S. 129, 136, 87

S.Ct. 932, 17 L.Ed.2d 814 (1967); System Federation No. 91 v. Reed, 180 F.2d 991, 998 (6th Cir. 1950); Wilson v. City of Paducah, 100 F.Supp. 116, 118 (W.D.Ky.1951); 3B J. Moore, Federal Practice ¶ 24.13[1] at 24–527–28 (2d ed. 1969).

70. *Supra* note 63.

71. 79 U.S.App.D.C. at 144, 144 F.2d at 508.

72. See note 9, *supra*.

73. LMRDA § 306, 29 U.S.C. § 466 (1970). See notes 15, 63, *supra*, and accompanying text. The original version of Rule 24(a) *required* that the proposed intervenors be or could be bound by a judgment in the suit wherein intervention was sought. This requirement was dropped when 24(a) was liberalized in 1966. The fact that the proposed intervenors here are bound under Section 466 seems sufficient in itself to indicate that degree of interest required under present Rule 24.

since they and other union members in their districts will have to live with whatever remedies the District Court fashions. Moreover, as the opinion in the election case points out, the suffrage rights of union members in these districts are inextricably bound up with the fate of the trusteeships.[74] We conclude that on balance of the relevant considerations, the scale weighs heavily in appellants' favor on the issue of timeliness.

■ But one question, then, remains to be resolved, and that is whether, as the District Court held, appellants' interest in this suit is adequately represented by the Secretary. In approaching this problem, we are guided by the Court's admonition in *Trbovich*.[75] That, for purposes of Rule 24, applicants for intervention need not prove that representation by the Secretary *is* inadequate but need show merely that it *may* be; and that the burden of making that showing should be treated as minimal.[76] For three reasons, we are of the opinion that appellants have met that standard.

■ First, we note that this case has consumed more than seven years while three Secretaries of Labor have successively manned the helm. In these days of overburdened court dockets, we would hesitate to say that even the passage of years between complaint and judgment itself bespeaks lax advocacy. But we readily recognize that time is one factor to be considered here, where the districts involved have endured trusteeships for decades. The case at bar suffers by comparison with other litigation brought by union members to liquidate trusteeships which was concluded successfully in far less time.[77]

Second, appellants contend that the proposed decree which the Secretary has submitted to the District Court will not restore full autonomy to the trusteed districts. As an example, they cite the failure of the Secretary to propose the popular election of members of executive boards in the affected districts. To the extent that this relief falls short of what appellants themselves would reasonably ask, the Secretary's representation of their interest in the remedial phase of the litigation is inadequate.

Finally, as the Supreme Court cogently observed in *Trbovich* with respect to suits brought by the Secretary under Title IV, the Secretary must also serve here in a dual capacity as a public official *and* as the union members' lawyer.[78] In the words of the Court:

> Both functions are important, and they may not always dictate precisely the same approach to the conduct of litigation. Even if the Secretary is performing his duties, broadly conceived, as well as can be expected, the union member may have a valid complaint about the performance of "his lawyer." [79]

The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard. We think appellants are entitled to intervene in the Secretary's suit in order to assure that their interest in effective dismantling of the unlawful trusteeships in their districts is safeguarded at this particularly crucial stage of the case. We accordingly hold that appellants must be granted intervention as of right, and our order disposing of this appeal so provides.

74. See note 21, *supra*, and accompanying text.

75. Trbovich v. UMWA, *supra* note 16, 404 U.S. at 538 n. 10, 92 S.Ct. 630.

76. *Id.*

77. Monborne v. UMWA District No. 2, 342 F.Supp. 718 (W.D.Pa.1971), a trusteeship suit commenced and conducted by union members, was concluded less than a year after it began when summary judgment for the plaintiffs was granted on May 10, 1972.

78. Trbovich v. UMWA, *supra* note 16, 404 U.S. at 539, 92 S.Ct. at 636.

79. *Id.*