Edward MONBORNE et al., Plaintiffs,

v.

UNITED MINE WORKERS OF AMERICA et al., Defendants.

Civ. A. No. 71-690.

United States District Court,
W. D. Pennsylvania.
March 26, 1973.

Lewis Sargentich and Harrison Combs, Washington, D. C., for defendant UMW.

Charles R. Both, of Cole & Groner, Washington, D. C., Samuel S. Pangburn, Washington, Pa., for plaintiffs.

Stephen K. Ernst, U. S. Dept. of Labor, Philadelphia, Pa., for Dept. of Labor.

Patrick Gleason and Andrew Gleason, of Gleason, DiFrancesco, Shahade & Markovitz, Johnstown, Pa., for intervenors.

## MEMORANDUM AND ORDER

McCUNE, District Judge.

On January 24, 1973, this court, 353 F.Supp. 255, ordered the Department of Labor to conduct an election in District 2 of the United Mine Workers of America and the Department of Labor has undertaken to conduct that election which has been required because of our previous order setting aside a so called "trusteeship" in District No. 2 (Opinion of May 10, 1972, 342 F.Supp. 718).

On March 14, 1973, the United Mine Workers of America (International Union) filed a motion for clarification of our order of January 24, 1973 and on March 20, 1973, there was filed a motion called "Motion to Intervene, Setting Forth Additional Facts and Requesting Relief." This motion was filed by Samuel Alessi and others, all of whom are members of local unions of the United Mine Workers of America in District No. 2.

It was apparent from a reading of the motions that there was continuing friction between the International Union and certain of the members of the union in District 2, especially those called "pensioners" (retired miners). It was also apparent that the old controversy was continuing in District 2, i. e., whether "pensioners locals" composed of retired miners were to exist or not in the future. The International had abolished them by resolution of January 4, 1973.

The petition to intervene alleged, in addition, however, that the guide lines or methods set up by the Secretary of Labor for the conduct of the election would deprive some of the older men of their ability to get to the polls since the pensioners' locals had been abolished and since the Secretary of Labor was therefore planning to set up polling places in

some 49 active local unions, but not in the pensioners' locals.

We permitted intervention to permit local members of the UMW to complain about lack of polling places and any unfair election planning.

We heard testimony on March 22, 1973, and our rulings were dictated from the bench and are thus part of the record.

The only purpose of this memorandum is to clarify our order of January 24, 1973, but we will briefly summarize our rulings here so that the order may be better understood.

It is apparent that the pensioner locals in District 2 deeply resent the order of the International Executive Board disbanding their locals. They intend to challenge the legality of that order. They tried to challenge it during the hearing. We ruled that the purpose of the hearing was not to litigate the legality of that order but to determine whether the Secretary of Labor was exercising his discretion fairly.

The Secretary of Labor has accepted the results of the disbanding of the pensioners' locals. He has not challenged the International's order but has accepted it. He has devised a means by which all pensioners may transfer into an active local and vote there and be a candidate from that local. He has also said that ample polling places will be established for the use of the pensioners when he knows where they will be required. He had had ample experience with UMW elections and appears to have the situation in hand.

We are not concerned with further Internal union battles at this stage but with insuring a fair election. We think, within the exercise of his discretion, the Secretary of Labor can accept the International's order and the results flowing from it or refuse to accept it if he thinks such an order will interfere with a fair election. The decision is his and what he has done thus far will not be disturbed.

Since the pensioners' locals have been disbanded it will be necessary that the District Board members in District 2 be elected at large and this will require a change in our order of January 24, 1973.

Accordingly, the order of January 24, 1973, will be clarified as follows:

### ORDER

And now, March 23, 1973, our order of January 24, 1973, is amended in the following respects:

Paragraph 4 shall not be considered to interfere with the internal operation of the union except where that internal operation interferes with the fairness of the nomination or election process or the preservation of assets or the termination of the trusteeship and the restoration of autonomy. The Secretary of Labor shall determine what internal operations interfere with the above. Therefore, if good cause exists in the operation of the union's affairs to replace an officer in District 2, the replacement may be made in the usual manner with the consent of the Secretary of Labor, but officers shall not be replaced in reprisal for joining in the instant action. They shall have an opportunity to show their good faith.

Paragraph 7 of the order of January 24, 1973, is now changed to permit the election of District Board members at large within District 2.

In establishing polling places the Secretary of Labor shall take into consideration the size and the rural nature of the District and the age of the membership, but the number of polling places will be within his discretion.

Finally, counsel for plaintiffs may delay the decision whether to request counsel fees and costs until after the conduct of the election and the conclusion of the litigation.