38 F.3d 1216
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 JER-WIL, INC., Plaintiff-Appellee,
and
Westco Group, Inc., Intervenor/Plaintiff-Appellee,
v.
Richard T. COOK, Defendant-Appellant.
 No. 93-4100.
 United States Court of Appeals, Sixth Circuit.
 Oct. 24, 1994.
 
 Before: CONTIE, MILBURN and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant, Richard T. Cook, appeals the district court's order finding him in contempt of a 1989 consent decree, entered into between plaintiff-appellee, Jer-Wil, Inc., and defendant, directing defendant to cease and desist from use of the name and trademark "Mattress Warehouse."
 
 I.
 
 2
 This contempt action pertains to trademark registration No. 1,237,826 for the mark "Mattress Warehouse" (hereinafter, "the tradename"), which was obtained by plaintiff Jer-Wil in December 1977. When Jer-Wil inadvertently allowed the registration to lapse, defendant Cook, a competitor, filed for and obtained the tradename by untruthfully representing to the Secretary of State of Ohio that no one else had the federal trademark registration for "Mattress Warehouse." Cook then interfered with Jer-Wil's business relationships and used the tradename in its business advertising. In 1989, Jer-Wil filed suit against Cook and on December 4, 1989, a Consent Order between the parties was entered into in district court, permanently enjoining and restraining Cook from use of the tradename "Mattress Warehouse" and from interfering with the business relationships between Jer-Wil and its franchisees.[1]
 
 
 3
 On September 9, 1991, Westco, a franchisee of Jer-Wil, purchased from Jer-Wil the right to use the tradename in northeast Ohio. When Westco attempted to register the tradename with the Secretary of State of Ohio, Westco was advised that defendant Cook was still the registered owner of the tradename in Ohio. The Secretary of State required that Cook assign the right to the tradename "Mattress Warehouse" to Jer-Wil before accepting for filing the consent from Jer-Wil to Westco for use of the name "Mattress Warehouse." However, upon request by Westco, Cook refused to relinquish the tradename. Jer-Wil then filed a motion in district court to show cause, which was denied on August 19, 1992.[2]
 
 
 4
 Subsequently, Cook again engaged in several actions indicating he owned the tradename "Mattress Warehouse." Jer-Wil again filed motions in district court against defendant for contempt of the 1989 Consent Order and for contempt sanctions. On July 14 and on July 27, 1993, hearings were held before the district court. On September 7, 1993, the district court found that defendant Cook had violated the 1989 Consent Order between defendant and plaintiff Jer-Wil and ordered sanctions against Cook in the amount of $12,340.01 for attorney fees. The district court also affirmed its prior order of March 17, 1993 granting Westco's motion for joinder. Defendant Cook timely filed an appeal.
 
 II.
 
 5
 We must first decide whether the district court erred in finding defendant in contempt of the 1989 Consent Order by threatening litigation in a telephone call to a potential landlord of Westco, Ms. Stoddart, by stating that he owned the mark "Mattress Warehouse" and that he would sue if Stoddart rented space for a "Mattress Warehouse" store to Westco. Defendant argues that the district court erred in finding him in contempt based solely upon the nonevidentiary affidavit of Ms. Stoddart and the testimony of Richard Jebber, who at the time was manager of Westco's Northfield Road store and was the only witness who testified at the hearings. Defendant argues that Mr. Jebber's testimony was hearsay and that the Stoddart affidavit could not be relied on as evidence, citing Effinger v. State, 2 Ohio Cir.Ct. 389 and on In re Neff, 20 Ohio App.2d 213 (1969).
 
 
 6
 This argument has no merit. Contrary to defendant's allegation, Ms. Stoddart's affidavit is not the only evidence in the record in regard to this issue. In addition, there is an affidavit of Westco's vice president, Linda Cook, who confirmed the substance of the Stoddart affidavit and stated that she also had had a conversation with Ms. Stoddart. The district court may take judicial notice of the existence of affidavits in the record. United States v. McCargo, 783 F.2d 507, 509 (5th Cir.1986). Moreover, Jebber testified about the actions he had to take in order to establish to Ms. Stoddart, that Westco, not defendant, had the right to use the name "Mattress Warehouse" in order to get Stoddart to rent space to Westco. This is not hearsay testimony. The two affidavits and Jebber's testimony are properly in the record and form uncontroverted evidence that the incident took place. The district court is affirmed on this issue.
 
 III.
 
 7
 We must next decide whether the district court properly found defendant in contempt of the 1989 Consent Order by writing a letter of August 20, 1992 to Westco demanding that Westco "cease and desist" from using the tradename "Mattress Warehouse" and demanding $25,000 for transfer of the name from defendant to Westco.
 
 
 8
 Cook argues that the district court erred in its determination, because on August 20, 1992 (the date of the letter at issue), he was the exclusive owner of the name "Mattress Warehouse" and had the right to try to sell the trademark before Jer-Wil requested that the mark be transferred to it, which did not occur until August 24, 1992. Defendant Cook refers to the district court's August 19, 1992 order, which directed defendant to "relinquish his rights [to the tradename "Mattress Warehouse"] within ten days upon request by Jer-Wil." Defendant argues that the fact that the court directed him to transfer his rights indicated he still owned the tradename and that he had the right to exercise dominion over it and even sell the tradename before its transfer.
 
 
 9
 This argument is without merit. As the district court pointed out, the 1989 Consent Order did not merely order the transfer of the tradename from defendant Cook to plaintiff Jer-Wil upon request by Jer-Wil, but was far more expansive. Because the Consent Order also permanently enjoined Cook from any use of, or assertion of ownership over, the name "Mattress Warehouse," defendant clearly violated this order by attempting to sell the name "Mattress Warehouse" to Westco on August 20, 1992. The district court is affirmed on this issue.
 
 IV.
 
 10
 We must finally decide whether the district court erred in permitting Westco to be joined in this action as an intervenor-plaintiff.
 
 
 11
 In the 1989 Consent Order, the district court required that defendant Cook assign to plaintiff his right to the mark "Mattress Warehouse" upon request. However, Jer-Wil did not at that time make a formal request to defendant Cook that he transfer the mark "Mattress Warehouse" to Jer-Wil, but instead Jer-Wil sold the right to the tradename to Westco on September 5, 1991. Defendant contends that until Jer-Wil formally requested that Cook assign the mark to Jer-Wil a year later on August 24, 1992, Cook retained the right to use the name "Mattress Warehouse" and committed no action that affected Westco before August 24, 1992. This argument has no merit. At the time Westco purchased the trademark from Jer-Wil on September 5, 1991, defendant Cook was under a permanent injunction prohibiting Cook from using the name "Mattress Warehouse" and subsequently he engaged in actions infringing upon the tradename and adversely affecting Westco.
 
 
 12
 Defendant Cook also argues that there is no proof in the record that Jer-Wil assigned the right to the mark "Mattress Warehouse" to Westco and, therefore, Westco cannot be joined in this action. This argument also has no merit. At the hearing before the district court on July 14, 1993, Westco's attorney explained that defendant Cook had not been able to see the assignment, because it was part of a state court agreement, which had been sealed, and absent an order of the state court judge or the mutual consent of Jer-Wil and Westco, Westco's attorney was not at liberty to disclose the document. Westco's attorney then offered to produce the document to the district court in camera and offered to let defendant's attorney see it, provided that the court issue an order to the effect that its contents were not to be disclosed to defendant Cook.
 
 
 13
 After reading a portion of the sealed document in open court with defendant's attorney present, the district court concluded that there had been a valid assignment of the tradename "Mattress Warehouse" from Jer-Wil to Westco and then ordered the document sealed. Defendant's attorney did not object. Thus, the record indicates that on September 5, 1991, there was a sale and assignment of the mark "Mattress Warehouse" from Jer-Wil to Westco.
 
 
 14
 The district court found that Westco was entitled to intervene as a party plaintiff in the present case because Westco was the successor-in-interest to the "Mattress Warehouse" tradename and only through the enforcement of the Consent Order issued on December 4, 1989 could Westco protect its rights to the tradename and mark. We agree. Fed.R.Civ.Pro. 24(b); Hodgson v. United Mine Workers of America, 473 F.2d 118, 129 (D.C.Cir.1972) ("intervention may be allowed even after a final decree where it is necessary to preserve some right which cannot otherwise be protected").
 
 
 15
 The district court is affirmed on this issue.
 
 V.
 
 16
 To conclude, the opinion of the district court is hereby AFFIRMED.
 
 
 
 [1]
 The Consent Order stated that Jer-Wil was the owner of the "Mattress Warehouse" trademark, that defendant Cook infringed on that mark by using the name in his business advertising, that Cook had engaged in unfair competition and in deceptive trade practices in violation of ORC Sec. 4165.02(B), and that defendant Cook had to assign all of his right, title and interest to the name and mark "Mattress Warehouse" to Jer-Wil upon request
 
 
 [2]
 The district court denied Jer-Wil's motion to show cause because it found that Cook was not in contempt of the 1989 Consent Order, since it was Westco's attorney, not Jer-Wil, who had requested that Cook relinquish the tradename, and the Consent Order directed Cook to surrender his rights to Jer-Wil, not to Westco